IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

SHIRLEY BROWN, AS NATURAL MOTHER AND
NEXT FRIEND OF JOSHUA BROWN, A MINOR                          PLAINTIFF

V.                                               CIVIL ACTION NO. 3:24-cv-00556-TSL-MTP

THE CITY OF JACKSON, MISSISSIPPI;
CHIEF JOSEPH WADE, in His Individual Capacity as
Chief of Police of City of Jackson, Mississippi;
HINDS COUNTY, MISSISSIPPI;
SHERIFF TYREE JONES, in His Individual Capacity
as Sheriff of Hinds County, Mississippi;
DR. ELAYNE HAYES ANTHONY, in Her
Individual capacity as President of Jackson State University;
HERMAN HORTON, in His Individual Capacity as
Chief of Police of Jackson State University;
TERRANCE JACKSON, in His Individual Capacity as
Detective and Officer of Jackson State University;
ALPHA PHI ALPHA FRATERNITY, DELTA PHI CHAPTER;
AND AS-YET UNKNOWN PERSON(S) OR ENTITIES
JOHN & JANE DOES 1-100                                         DEFENDANTS

**FIRST AMENDED COMPLAINT**
Jury Trial Requested

**COMES NOW, SHIRLEY BROWN, AS  NATURAL MOTHER AND NEXT FRIEND OF JOSHUA BROWN , A MINOR,** and files this FIRST AMENDED COMPLAINT against the Defendants THE CITY OF JACKSON, MISSISSIPPI; CHIEF JOSEPH WADE, in His Individual Capacity as Chief of Police of City of Jackson, Mississippi; HINDS COUNTY, MISSISSIPPI; SHERIFF TYREE JONES, in His Individual Capacity as Sheriff of Hinds County, Mississippi; DISTRICT ATTORNEY JODY OWENS, in His Individual Capacity As District Attorney of Hinds County, Mississippi; DR. ELAYNE HAYES ANTHONY, in Her Individual

capacity as President of Jackson State University; HERMAN HORTON, in His Individual Capacity as Chief of Police of Jackson State University; TERRANCE JACKSON, in His Individual Capacity as Detective and Officer of Jackson State University; ALPHA PHI ALPHA FRATERNITY, DELTA PHI CHAPTER; AND AS-YET UNKNOWN PERSON(S) OR ENTITIES JOHN & JANE DOES 1-100 and, in support thereof, would show as follows:

<u>**JURISDICTION AND VENUE**</u>

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1323 because the matters in controversy arise under the Constitution and laws of the United States including 42 U.S.C. § 1983.

2.      This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 (b) because the conduct, acts and/or omissions upon which this cause of action is based occurred in Hinds County, Mississippi, which is completely within the jurisdiction of the United States District Court for the Southern District of Mississippi, Jackson Division, and this cause involves Federal Questions of law.

<u>**PARTIES**</u>

4.      Plaintiff is Shirley Brown, as Natural Mother and Next Friend of Joshua Brown, a minor, and is an adult resident citizen of Columbia, Marion County, Mississippi.

5.      Defendant City of Jackson, Mississippi is a governmental entity and may be served with process of this Court by delivering a copy of the summons and complaint to its municipal (city) clerk, Angela Harris, who may be served with process at the address of 219 South President Street, Jackson, Mississippi 39201.

2

6.      Defendant Chief Joseph Wade, employed with the City of Jackson, Mississippi, is an adult resident Citizen of Hinds County, Mississippi and he may be served with Process at 327 E. Pascagoula Street, Jackson, MS 39205.

7.      Defendant Hinds County, Mississippi is a political subdivision of the State of Mississippi. Defendant County may be served with process through Hinds County Chancery Court Clerk, Eddie Jean Carr, who also serves as the Clerk of Hinds County Board of Supervisors, located at the Hinds County Chancery Courthouse, 316 South President Street, Jackson, Mississippi 39201. Defendant County controls the Hinds County Detention Center in Raymond, Mississippi. The inhumane conditions in the jail, to be described herein, are the proximate result of official policy decisions of the Sheriff of Hinds County, Mississippi and of its Board of Supervisions.

8.      Defendant, Tyree Jones, is the duly elected Sheriff of Hinds County, Mississippi. Sheriff Jones is the policy maker of the Hinds County Sheriff Department, which also includes the HCDC. Sheriff Jones knew prior to this incident that the HCDC was understaffed with untrained officers and of inhumane and unsafe conditions of the jail. Sheriff Jones was sworn into office on December 3, 2021, and attended numerous court hearings regarding the consent decree with the United States of America which was entered into on June 23, 2016. See US. v. Hinds County, et, al. 3:16-cv- 489, that was in effect prior to him being elected. Since the consent decree was in effect, independent expert jail consultants have continued to note the jail was not adequately staffed, the jailers were not trained, and that inmates were not being protected from harm, and inhumane conditions. Sheriff Jones' inactions created a policy at the HCDC of understaffing the jail with untrained officers and failing to protect inmates, like Joshua, from inhumane conditions. In an evidentiary hearing against Hinds County from February 14, 2022 to March 1, 2022, before

Judge Carlton Reeves in U.S. District Court, where the Judge found the county in contempt for a second time on March 23, 2022, after the same conclusion the previous month, both time outlining various violations, Hinds County Sheriff Tyree Jones testified he didn't want the Raymond Detention Center to be put into federal receivership. He stated, "I want the opportunity for my administration to make a difference to address the jail situation. It's the sheriff's duty to oversee the jail as well as jail operations. I want to be responsible for getting us out of the current situation we're in." In his ruling on the evidentiary hearing, Judge Reeves questioned the county's testimony that it had failed to implement the decree, in part, due to significant changes in leadership. Sheriff Jones argued that he had only been in office a couple of months prior to the hearing. However, Judge Reeves stated Sheriff Jones was familiar with the jail as a member of the former Sheriff Lee Vance's command staff and that the Board of Supervisors President, Credell Calhoun, along with his wife, had served the county longer than the RDC has been in place. See Honorable District Carlton Reeves Order, Case 3: 16-cv-00489-CWR-RHWR, attached as Exhibit "D" filed on July 29, 2022. As a result of the inhumane conditions, Joshua Brown experienced and witnessed acts that have caused him irreparable harm. Defendant, Tyree Jones may be served with process through Hinds County Chancery Court Clerk, Eddie Jean Carr, who also serves as the Clerk of Hinds County Board of Supervisors, located at the Hinds County Chancery Courthouse, 316 South President Street, Jackson, Mississippi 39201. Additionally, Sheriff Jones may be served with process at his place of employment, Hinds County Sheriff Department, 407 East Pascagoula Street, Jackson, Mississippi 39205, place of residence, or wherever he may be found.

9.      Defendant Dr. Elayne Hayes Anthony is an adult resident citizen of Madison County, Mississippi and was the Acting Interim President of JSU at all times relevant to the facts and occurrences alleged in this Complaint. She may be served with process at Jackson State

4

University E-Center, at 1230 Raymond Road, Jackson, Mississippi 39204, or 101 Normandy Circle, Madison, Mississippi 39046, or wherever she may be found.

10.   Defendant Herman Horton is an adult resident citizen of Madison County, Mississippi and was the acting Chief of JSU Campus Police at all times relevant to the facts and occurrences alleged in this Complaint. He may be served with process at 107 Bridge Park Drive, Canton, Mississippi 39046 or wherever he may be found.

11.   Defendant Terrance Jackson is an adult resident citizen of Hinds County, Mississippi and was an acting Detective with JSU Campus Police at all times relevant to the facts and allegations made in this Complaint. He may be served with process at his current employer, Jackson Police Department, Robbery- Homicide Division, 327 E. Pascagoula Street, Jackson, Mississippi 39205 or wherever he may be found.

12.   Defendant Alpha Phi Alpha Fraternity, Inc. is a fraternal organization registered to do business in the state of Mississippi and has a chapter on the JSU campus (Delta Phi Chapter). This Defendant may be served with process by serving their agent for service of process Brian Carter located at 134 West McDowell Road, Jackson, Mississippi 39204, or wherever he may be found.

13.   Plaintiff is ignorant as to the identities of Defendant John and Jane Does 1-100 who are unknown officers, employees, agents, and/or servants of the Defendants. Plaintiff will amend this First Amended Complaint to allege their true names and allege that each of the fictitiously named Doe Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages, as alleged herein, were proximately caused by their conduct. Plaintiff, upon information and belief, asserts that the Doe Defendants were the officers, agents, servants, and employees of the Defendants herein, and were at all times acting under color of law

with the permission and consent of Defendant within the course and scope of their employment.

**FACTS**

14. Plaintiff adopts by reference the allegations in his original Complaint on file herein as if fully set forth herein.

15. Plaintiff Joshua Brown was wrongfully, negligently, falsely, maliciously and in reckless disregard for his safety and well-being and in violation of his rights under the United States Constitution and the Constitution for the State of Mississippi, arrested on or about October 19, 2023 for the murder of Jaylen Burns, detained in jail at the Raymond Detention Facility in Hinds County, Mississippi, and eventually released on November 13, 2023, after a number of individuals had on multiple occasions provided and/or attempted to provide exculpatory evidence proving that Joshua Brown was in Hattiesburg, MS at the time of the murder of Jaylen Burns.

16. On or about October 15, 2023, Jaylen Burns, a member of Alpha Phi Alpha, Delta Pi Chapter, was shot to death at the University Pointe Apartments on the campus of Jackson State University.

17. At the time of the murder, Joshua Brown was more than 80 miles away in Jones County, Mississippi where cell phone data and video surveillance footage conclusively showed his presence and whereabout.

18. After the shooting, a number of members of the Alpha Phi Alpha fraternity, Delta Phi Chapter who were then present at the scene of the shooting baselessly accused and alleged that Joshua Brown pulled the trigger.

19. On or about October 16, 2023, Chief Joseph Wade of the Jackson Police Department publicly announced via media press conference that the Jackson Police Department was "assisting in the investigation to apprehend the person of interest."

20.     On or about October 18, 2023, Detective Terrance Jackson swore out an affidavit that Joshua Brown killed and murdered Jaylen Burns.[1]

21.     On or about October 18, 2023, Detective Terrance Jackson further swore out at an affidavit that Joshua Brown carried a "black and silver 9mm semi-automatic handgun on educational property".

22.     Based on the two above mentioned sworn affidavits, on or about October 18, 2023, two (2) bench warrants were issued to the Sheriff of Hinds County, Mississippi for the immediate arrest and apprehension of Joshua Brown—who was enrolled and attending Jones College in Ellisville, MS.

23.     On or about October 18, 2023, Joshua Brown was detained on the Jones College campus. Joshua Brown was immediately taken from Jones County to the Raymond Detention Center and placed in the general population in "B-Pod" with inmates and other detainees.

24.     At all times relevant, Tyree Jones and Hinds County knew or should have known that the Raymond Detention Center, a facility that is under the control of Tyree Jones and/or Hinds County, had fallen below Eighth Amendment and Fourteenth Amendment constitutional standards.[2]

25.     On or about October 19, 2023, Defendants began to make statements to the media regarding the arrest of Joshua Brown. Elaine Hayes Anthony, President of JSU, Herman Horton, Chief of JSU Police Department, Terrance Jackson, Investigator for JSU Police Department, and Tyree Jones, Sheriff of Hinds County, Mississippi all recklessly and with disregard for the truth

---

[1] See Court Records, attached as Exhibit A.
[2] See *United States v. Hinds County*, 2022 WI 1112223 (S.D. Miss. 2022); and as described throughout the pleadings in *United States v. Hinds County, et. al.* United States District Court, Southern District of Mississippi, Civil Action No. 3:16cv489.

held press conferences and released public statements to the media regarding their allegations, arrest, and incarceration of Joshua Brown.

26.     Photographs were disseminated in the media showing Joshua Brown with both hands and feet completely shackled and in a red jumpsuit, the likes of which indicates an inmate charged with capital murder or other heinous and violent offenders.

27.     On or about October 20, 2023, Jamison Kelly, an alleged getaway driver for Joshua Brown was also arrested as an accomplice to the murder of Jaylen Burns.

28.     On or about October 20, 2023, Joshua Brown appeared for an initial appearance on the charge of murder and possessing a firearm on a college campus. Bond was denied.

29.     While incarcerated at the Raymond Detention Center, Joshua Brown witnessed a suicide in a nearby cell and has had extensive psychological treatment related to that incident and being subjected to inhumane conditions and baseless criminal prosecution.

30.     On October 24, 2023, representatives of Joshua Brown provided JSU with evidence that clearly showed Joshua Brown was in Jones County, Mississippi, approximately ninety (90) miles from Jackson State University on October 15, 2023.

31.     On October 30, 2023, a spokesperson appointed by Joshua Brown's family provided video surveillance footage and evidence to WLBT 3 News showing Joshua Brown at a number of locations in Jones County during the time of the shooting.[3]

32.     On October 31, 2023, WLBT 3 News reported that a Krispy Kreme employee in Hattiesburg, Mississippi served Joshua Brown at the drive through window shortly before closing the store at 10:00 p.m. It was further reported that the Jones College football coach shared surveillance footage of Joshua Brown on the campus of Jones College by 10:30 p.m. the night of

---

[3] See Composite Exhibit of News Articles, attached as Exhibit B.

the shooting. The report also stated that WLBT was able to contact the Krispy Kreme employee within 24 hours of receiving the video footage of Joshua Brown at its Hattiesburg location, but confirmed that neither Detective Jackson, nor any other Defendants assisting with the investigation, had not contacted Krispy Kreme or its employees over a week after receiving the surveillance video footage of Joshua Brown at that location. *Id*.

33.   On November 1, 2023, WLBT 3 reported that it had spoken to three (3) individuals who were with Joshua Brown on October 15, 2023, between the hours of 8 a.m. and 10:30 p.m. *Id*.

34.   Makaila Smith, Joshua Brown's girlfriend, was with him all day until 8:00 p.m. on the night of the shooting. Ms. Smith said she was not contacted until over two (2) weeks after the arrest and upon being contacted she attempted to provide the investigator with evidence of Joshua Brown's location on the night of the killing, but was told by the investigator that he "didn't want to see it." *Id*.

35.   Cedric Watts, a friend of Joshua Brown, had not been contacted by any authorities, but reported to WLBT that he was with Joshua Brown from 8:30 p.m. to about 10:00 p.m on the night of the shooting—the same time period in which the shooting took place on the JSU campus eighty-nine (89) miles away. *Id*.

36.   Cedric Beavers, Joshua Brown's roommate, confirmed that Joshua Brown was on the Jones College campus around 10:30. Mr. Beavers helped Joshua Brown take groceries to their room and then they played a game. *Id*.

37.   On November 2, 2023, the spokesperson for Joshua Brown had an interview with WDAM 7 News of Hattiesburg wherein he laid out the overwhelming evidence presented to Detective Jackson and other Defendants assisting with the investigation showing Joshua Brown's

whereabouts at the time of the shooting, further elaborating on the impossibility of being in two places eighty-nine (89) miles apart at the same time. *Id*.

38.     On November 6, 2023, WLBT 3 interviewed Shania Martin, Joshua Brown's cousin, who shared screenshots of Joshua Brown's location on October 15, 2023 through a phone tracking application called "Life360" which showed Brown's location in Jones County the entirety of the evening and night of the shooting, and also confirmed the statements of Cedric Watts, Cedric Beavers, Makaila Smith, and the Krispy Kreme employee, along with the other videos of surveillance footage provided to Defendant Jackson and other Defendants assisting with the investigation weeks prior. *Id*.

39.     On November 10, 2023, the Mississippi Free Press released an article that in effect summarizes the exculpatory evidence and witness statements of Joshua Brown's friends and family, including screenshots of the Life360 app and surveillance footage. *Id*.

40.     On November 10, 2023, after the Court was advised "by the Detective on the case that the charges murder and possession of a weapon on school property had been N/A'd", Joshua Brown was order to be released immediately from the Raymond Detention Center, however, upon information and belief, Defendants did not physically release Joshua Brown until November 13, 2023.

41.     During the pendency of Joshua Brown's false imprisonment and illegal detention, there is no question that an innocent minor spent almost a month in the Raymond Detention Center, a facility that is and was under receivership for its abhorrent and dangerous unconstitutional conditions.

42.     There is no doubt that when Joshua Brown's representatives presented conclusive, exculpatory, direct, and verifiable evidence to the Detective Jackson and other Defendants

assisting with the investigation, that no efforts in any manner were taken related to that evidence provided to said Defendants.

43.     Further, Jamison Kelly, the alleged getaway driver, had a preliminary hearing on November 13, 2023. At that hearing, Detective Jackson testified that he had not even interviewed the three individuals that were in Jamison Kelly's vehicle. [4]

44.     Detective Jackson also testified that tag readers and other video surveillance showed Kelly arriving on campus in a blue Acura that followed Elisha Brown (Joshua Brown's sister) to the University Pointe Apartments on the Jackson State University Campus.[5]

45.     Defendants wholly failed to conduct interviews of known witnesses and ignored, refused, and/or neglected to reasonably investigate clear exculpatory evidence that proved Joshua Brown was not in Jackson, Mississippi at the time of the shooting.

46.     In the rush to make an arrest and "solve" the crime, Defendants herein have caused irreparable damage and harm to Joshua Brown.

47.     In addition to the facts already alleged, Joshua Brown was deprived of basic humane necessities including but not limited to: inedible moldy food, lack of access to and deprivation of drinking water, deprived of access to sanitary necessities such as a working toilet and showers, deprived of access to a bed and/or blankets, deprived of access to underwear, deprived of access to a clean and/or sanitary clothing.

48.     Joshua Brown did not have access to a working toilet and was forced to use another inmate's toilet; he was forced to be under the constant threat of violence due to the fact that the

---

[4] 'Cannot be held': Second person arrested in JSU shooting case to be released
[5] It was impossible for Joshua Brown to be riding in the blue Acura, as Joshua Brown was eight-nine (89) miles away at the time of this incident.

cell door locks were inoperable; and he was forced to barter for access to use the sanitary facilities of another inmate's cell.

49.     Basic human necessities include food, clothing, shelter, medical care, reasonable safety, warmth, exercise, personal hygiene and sleep. Denial of any one of these exhibits a violation of a constitutional right—moreover, Joshua Brown was a minor at the time of his arrest and a pre-trial detainee forced to be incarcerated with convicted criminals due to overcrowding.[6]

50.     Joshua Brown was forced to be incarcerated with hundreds of convicts while he was a pre-trial detainee. He was subjected to hourly to violence, extortion, and physical, emotional, and mental injury while incarcerated in the overcrowded and unconstitutional conditions of the Raymond Detention Center.

51.     Plaintiff Joshua Brown's injuries and damages were caused by Defendants and policymakers/officers, agents, members and employees of Defendants, including but not limited to the individually named Defendants who acted pursuant to the policies, practices, and customs set forth herein in engaging in the misconduct described in this Amended Complaint.

52.     The serious deprivation of Joshua Brown's human rights amounted to punishment while he was a minor pretrial detainee.

53.     At all times relevant, Defendants knew or should have known that there was no probable cause to validate a warrant to unlawfully arrest and detain Joshua Brown as he was eight-nine (89) miles away at the time of the shooting. Defendants failed to train, supervise, and/or oversee its employees during the pendency of this false arrest and prosecution. Defendants' actions

---

[6] *Rhodes v. Chatman* 452 U.S. 101 S. Ct. 2392 (1981); *Helling vs. McKinney* 509 U.S. 113 S.Ct. 2475 (1993); *Farmer v. Brennan*, 511 US. 825, 114 S.Ct. 1970 (1994).

have been a longstanding pattern and practice, and each Defendant is individually liable for Plaintiff's damages.

<u>CLAIMS FOR RELIEF</u>

<u>COUNT I</u>
**42 U.S.C. § 1983—Due Process**
**(All Defendants except Hinds County, Mississippi, Sheriff Tyree Jones, and Alpha Phi Alpha Fraternity, Delta Phi Chapter)**

54. Plaintiff incorporates each paragraph of this Amended Complaint as if fully restated here.

55. In the manner described more fully above, Defendants, City of Jackson, Mississippi, Chief Joseph Wade, Dr. Elayne Hayes Anthony, Herman Horton, and Terrance Jackson, while acting as investigators, individually, jointly, and in conspiracy with those unknown at this time being John Does 1-100, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional rights as set forth hereinafter.

56. Defendants deliberately misapprehended, suppressed exculpatory evidence, hiding it from Plaintiff, thereby misleading and misdirecting the criminal prosecution of Plaintiff. Defendants also ignored direct exculpatory evidence that proved his innocence.

57. The exculpatory value of that evidence was apparent to the Defendants, or the evidence was potentially exculpatory, and the Defendants knew that. Nonetheless, the Defendants ignored the evidence. In the alternative, Defendants acted in bad faith in ignoring the evidence.

58. Defendants, upon information and belief, fabricated and solicited evidence that they knew or should have known to be false, including but not limited to witness identifications, statements, and testimony that they knew to be false, which allegedly implicated Plaintiff in the crime, and they obtained Plaintiff's arrest and incarceration in knowingly unconstitutional

conditions for 27 days—using that false evidence. Defendants failed to correct fabricated and/or unreasonably relied upon evidence that they knew to be false when it was used against Plaintiff in criminal proceedings, especially after the Defendants were presented with but yet ignored direct exculpatory evidence.

59.     Defendants, upon information and belief, utilized a series of false and fraudulent reports and related documents, which they inserted into their file and presented to state prosecutors and judges. These documents, which were used to show Plaintiff's alleged connection to the crime, contained statements and described events that were fabricated and that Defendants knew to be false and were generated by Defendant.

60.     Moreover, Defendants produced a series of witness statements/reports and related documents, which they inserted into their file for the alleged get-away driver Jamison Kelly only after they "N/A'd" the charges against Joshua Brown, which unequivocally detail those present during the shooting—none of which were Joshua Brown, despite their knowledge that the information contained in those reports further exonerated Joshua Brown.[7]

61.     Defendants, upon information and belief, also obtained false eyewitnesses identifications of Plaintiff, allegedly implicating him in the crime. These identifications were completely unreliable and Defendants knew that they were false. Defendants used the resulting false identifications to taint Plaintiff's criminal prosecution until its dismissal. Without these false eyewitnesses identifications, Plaintiff would never have been arrested, charged, and incarcerated, in knowingly unconstitutional conditions for 27 days.

62.     In addition, Defendants, based upon information and belief, concealed and fabricated additional evidence that is not yet known to Plaintiff.

_____
[7] See Court records attached hereto as Exhibit C.

63. Defendants, whom all were overseeing the investigation murder of Jaylen Brown, knew full well of the suppression of exculpatory evidence, and the fabrication of a false case against Plaintiff.

64. Defendants' misconduct directly resulted in the unjust criminal arrest and incarceration of Plaintiff in knowingly unconstitutional conditions for 27 days. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

65. The misconduct described in this Amended Complaint was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference or disregard to the rights and well-being of others, a conscious indifference to consequences and in total disregard of the truth and Plaintiff's clear innocence.

66. As a result of Defendants' misconduct described in this Amended Complaint, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages will be more fully shown at the trial of this matter.

67. Plaintiff's injuries and damages were caused by the official policies of Defendants, by the practices and customs of Defendants, as well as by the actions of final policymaking officials for Defendants.

68. At all times relevant to the events described in this Amended Complaint and for a period of time prior thereto, Defendants promulgated rules, regulations, policies, and procedures governing witness interviews, photo lineups, preservation and disclosure of investigative materials and evidence, questioning of criminal suspects, in-court testimony, preparation and presentation of witness testimony, and training, supervision, and discipline of their employees and agents.

69. These rules, regulations, policies, and procedures were implemented by employees

and agents of Defendants, including the individual Defendants, who were responsible for conducting investigations of crimes in and around Jackson, Mississippi.

70.    In addition, at all times relevant to the events described in this Amended Complaint and for a period of time prior thereto, Defendants had notice of a widespread practice by its officers and agents , including the individual Defendants, under which individuals suspected of criminal activity, such as Plaintiff, were routinely subject to manipulated and distorted evidence, photographic lineup procedures, deprived of or ignoring exculpatory evidence, were subjected to criminal proceedings based on false evidence, and were deprived of their liberty without probable cause, such that individuals were routinely implicated in crimes to which they had no connection and for which there was scant evidence to suggest that they were involved.

71.    These widespread practices were allowed to flourish because the leaders, supervisors, and policymakers of Defendants directly encouraged and were thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and discipline their officers, agents, and employees who withheld material evidence, fabricated false evidence and witness testimony, and pursued wrongful prosecutions and convictions.

72.    The above-described widespread practices, which were so well settled as to constitute the de facto policy of the Defendants, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

73.    The misconduct described in this Amended Complaint was undertaken pursuant to the policy and practices of Defendants in that the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with final policymaking

authority for the Defendants or were actually committed by persons with such final policymaking authority. Further based upon information and belief this is not the first time the Defendants have committed acts or omissions against citizens of this State, therefore the allegations herein are not isolated events but are evidence of policy, custom and practice of the Defendants.

74.     Plaintiff alleges based upon information and belief that there is, in fact, a policy, custom and practice of the Defendants, rather than fully investigation criminal matters, to charge innocent individuals of crimes in order force their cooperation even when said individuals may not have any information related thereto; to incarcerate individuals with excessive or no bail in order that the Defendants may coerce an admission of the acts being investigated even when said individuals could not possibility admit any such acts because they were not involved in the first place; to offer polygraph examination knowing full well that the Defendants would claim the individual had failed the same regardless of the results in order that the Defendants may coerce an admission of the acts being investigated even when said individuals could not possibility admit any such acts because they were not involved in the first place; once the Defendants the determine the individuals such Plaintiff, were not involved in the incident, to permit their release rather than admit they were wrong and their affidavits support a warrant in the first place was false; keeping individual under arrest for extended period of time despite knowing that others had committed the crime and other such policies, customs or practices as will be shown by discovery.

75.     The policies, practices, and customs set forth above were the moving force behind the numerous constitutional violations in this case and directly and proximately caused Plaintiff to suffer the grievous and permanent injuries and damages set forth above.

76.     Plaintiff's injuries and damages were caused by officers, agents, and employees of the Defendants, including but not limited to the individually named Defendants, who acted

17

pursuant to the policies, practices, and customs set forth above in engaging in the misconduct described in this Amended Complaint.

## COUNT II
### 42 U.S.C. § 1983—Federal Malicious Prosecution
**(All Defendants except Hinds County, Mississippi, Sheriff Tyree Jones, and Alpha Phi Alpha Fraternity, Delta Phi Chapter)**

77.     Plaintiff incorporates each paragraph of this Amended Complaint as if fully restated here.

78.     In the manner described above, Defendants City of Jackson, Mississippi, Chief Joseph Wade, Dr. Elayne Hayes Anthony, Herman Horton, and Terrance Jackson, acting as investigators, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

79.     In doing so, Defendants caused Plaintiff to be unreasonably seized without probable cause and deprived of his liberty, in violation of Plaintiff's rights secured by the Fourth and Fourteenth Amendments for 27 days until on or about November 13, 2023. The false judicial proceedings against Plaintiff were instituted and continued maliciously, resulting in injury and damages. Defendants also deprived Plaintiff of fair state criminal proceedings, including the chance to present evidence in defense of himself during those proceedings, resulting in a deprivation of his liberty.

80.     In addition, Defendants subjected Plaintiff to arbitrary governmental action that shocks the conscience in that Plaintiff was deliberately and intentionally charged with a crime of which he was totally innocent, through Defendants' fabrication and suppression of evidence and their refusal to even gather evidence of innocence, placing in under an no bail, and not dismissing

the charge against him immediately upon receiving exculpatory evidence, but continuing the charge against him for nearly two weeks at least or until November 10, 2023.

81.    The misconduct described in this Amended Complaint was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference and disregard to the rights and well-being of others, including Plaintiff and in total disregard of the truth and Plaintiff's clear innocence.

82.    As a result of Defendants' misconduct described in this Amended Complaint, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and other damages as will be shown at the trial of this matter.

83.    On or about November 10, 2023, the judicial proceedings against Plaintiff were terminated in his favor, in a manner indicative of his innocence, after the Court was advised on November 10, 2023 "by the Detective on the case that the charges of murder and possession of a weapon on school property had been N/A'd". Defendants' misconduct described in this Amended Complaint was undertaken pursuant to the policies, practices, and customs of Defendants, and by Defendants, who were final policymakers for Defendants, in the manner more fully described above.

84.    After the murder of Jaylen Burns Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to claim the Plaintiff murdered Jaylen Burns, a crime he did not commit, and thereby to deprive him of his constitutional rights, all as described in the various paragraphs of this Amended Complaint.

85.    In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

86.     In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

87.     The misconduct described in this Amended Complaint was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

88.     As a result of Defendants' misconduct described in this Amended Complaint, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

89.     Defendants' misconduct described in this Amended Complaint was undertaken pursuant to the policies, practices, and customs of Defendants, and by Defendants who were final policymakers for Defendants, in the manner more fully described above.

**COUNT III**
**43 U.S.C. § 1983 – Federal False Imprisonment**
**(All Defendants except Hinds County, Mississippi, Sheriff Tyree Jones, and Alpha Phi Alpha Fraternity, Delta Phi Chapter)**

90.     Plaintiff incorporates each paragraph of this Amended Complaint as if fully restated here.

91.     Plaintiff was falsely imprisoned by the Defendants City of Jackson, Mississippi, Chief Joseph Wade, Dr. Elayne Hayes Anthony, Herman Horton, and Terrance Jackson, as hereinabove set forth. Said false imprisonment commenced on or about October 18, 2023, continued through November 13, 2023, after the Court was advised on November 10, 2023 "by the Detective on the case that the charges murder and possession of a weapon on school property had been N/A'd".

**COUNT IV**
**43 U.S.C. § 1983 –8th and 14th Amendment Violations: Protection from Harm and Dangerous Conditions of Confinement**
**(Hinds County, Mississippi and Sheriff Tyree Jones)**

92.     Plaintiff incorporates each paragraph of this Amended Complaint as if fully restated here.

93.     Hinds County, acting by and through its elected and appointed officials, and Sheriff Jones acted with deliberate indifference in the allegations listed above.

94.     Defendants established customs, policies and procedures directly and proximately caused the deprivation of the Plaintiff's constitutional rights as alleged herein.  Defendants were deliberately indifferent to the safety of the Plaintiff and other inmates housed at the Raymand Detention Center.  As a result of these policies, the Defendants failed to protect the Plaintiff and created unconstitutional conditions of confinement.[8]

95.     Such unwritten policies, customs and practices include, but are not limited to the following:

a.     inadequate and improper training, supervision and discipline of corrections officers;

b.     inadequate and improper procedures and practices in screening, hiring, training, supervising and disciplining officers who practice, condone or use excessive force upon inmates, including the plaintiff in violation of their constitutional rights.

c.     inadequate and improper procedures, policies and practices for investigating improper activities by officers either through offender complaints of misconduct or through internally-initiated complaints or investigations.

---

[8] These conditions have been held unconstitutional by this Court in *United States v. Hinds Cnty*, 2022 WL 1112223 (S.D. Miss. 2022) and Defendant is collaterally estopped to deny that Joshua Brown was held in conditions which violate the Eighth and Fourteenth Amendments.  This Court's opinion and consent orders in Civil Action No.  3: 16cv489, reported at *United States v. Hinds Cnty.,* 2022 WL  1112223 (S.D. Miss. 2022) are hereby incorporated into this Complaint by reference. See Exhibit D.

d. inadequate or improper procedures, policies and practices for identifying and taking appropriate action against officers who are in need of re-training, corrective measure, reassignment, or other non- disciplinary actions, through a positive or early warning system designed to prevent the violation of inmates' rights.

e. officers condoning and allowing inmates to fight;

f. failing to protect inmates from harm;

g. failing to prevent incidents of violence about which Hinds County employees had warning;

h. failure to properly classify inmates;

i. failure to have a protective custody system;

j. maintaining a jail with inadequate security, such as properly locking cell doors and knowingly allowing inmates access to materials which they then turned into "shanks";

k. failing to address the smuggling of contraband into the facility; and

l. the chronic understaffing at the jail and hiring jailers with little to no training or supervision.

m. Failing to conduct shakedowns to recover contraband.

n. Failing to conduct safety checks in housing units or having officers assigned to housing units

By exhibiting deliberate indifference to the substantial risk of harm Plaintiff faced as a result of Defendants policies and practices set forth above, the Defendants violated Plaintiff's right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

## COUNT V
### False Arrest/Illegal Detention
**(All Defendants except Hinds County, Mississippi, Sheriff Tyree Jones, and Alpha Phi Alpha Fraternity, Delta Phi Chapter)**

96.    Plaintiff incorporates by reference each paragraph of this Amended Complaint as if fully restated here.

97.    As a direct and proximate result of Defendants' actions and/or inactions Joshua Brown was falsely arrested without probably cause in violation Fourth Amendment rights made actionable by 42 U.S.C. 1983.

98.    Defendants, City of Jackson, Mississippi, Chief Joseph Wade, Dr. Elayne Hayes Anthony, Herman Horton, and Terrance Jackson, who acted in individually and in concert, had not observed Joshua Brown commit any crime, nor were they able to present any evidence that Joshua Brown committed any crime, or any credible evidence that he was even within the proximity of the shooting. However, these same Defendants ignored credible and verifiable evidence that Joshua Brown was in fact approximately eight-nine (89) miles away at the time of the incident.

99.    Defendants also failed to interview key witnesses that were allegedly present at the crime scene, and also failed to contact any witnesses who were actually present with Joshua Brown at the time of the shooting.

100.    Defendants filed affidavits and had issued arrest warrants on two claims against Joshua Brown and violated his rights by depriving him of his liberty without due process of law by taking him into custody and holding him against his will, and by refusing or neglecting to prevent such deprivations thereby depriving Joshua Brown of his rights, privileges, and immunities guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution.

## COUNT VI
### Failure To Train/Supervise
**(All Defendants except Alpha Phi Alpha Fraternity, Delta Phi Chapter)**

101.    Plaintiff incorporates by reference each paragraph of this Amended Complaint as if fully restated here.

102.    The failure of Defendants, City of Jackson, Mississippi, Chief Joseph Wade, Hinds County, Mississippi, Sheriff Tyree Jones, Dr. Elayne Hayes Anthony, Herman Horton, and Terrance Jackson, to properly train its/their employees including but not limited to: police officers, jail employees, detention officers, investigators, detectives, officials, and others demonstrated deliberate indifference to the rights of Joshua Brown.

103.    This lack of training and/or policy is evidenced by Joshua Brown being falsely incarcerated for 27 days without probably cause for his arrest and failing to provide Joshua Brown with a safe environment while he was a detainee in the custody and care of Defendants, which is a violation of his constitutional rights, which is a proximate cause of his damages stated herein.

## COUNT VII
### Ratification
**(All Defendants except Alpha Phi Alpha Fraternity, Delta Phi Chapter)**

104.    Plaintiff incorporates by reference each paragraph of this Amended Complaint as if fully restated here.

105.    Defendants, City of Jackson, Mississippi, Chief Joseph Wade, Hinds County, Mississippi, Sheriff Tyree Jones, Dr. Elayne Hayes Anthony, Herman Horton, and Terrance Jackson, through its policy makers, officers, and officials were advised about the exculpatory evidence involving Joshua Brown and Defendants by and through their policy makers, officers, and officials ignored that evidence showing a widespread disregard of policies and procedures as to the requirements of having probable prior to making an arrest and incarceration of Joshua

24

Brown, and as furthered evidenced by Defendants' failure to release Joshua Brown upon knowledge and proof that no reasonable person could believe that Joshua Brown was even present in Jackson, Mississippi on October 15, 2023.

106. Yet, Defendants detained Joshua Brown in custody, despite having actual and/or constructive knowledge that no probable cause could be shown, and that direct exculpatory evidence had been produced directly to said Defendants showing his innocence.

107. As a result of Defendants actions described in this Amended Complaint, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as will be more fully shown at trial of this action.

**COUNT VIII**
**Danger Created Under the Color of State Law**
**(All Defendants except Alpha Phi Alpha Fraternity, Delta Phi Chapter)**

108. Plaintiff incorporates by reference each paragraph of this Amended Complaint as if fully restated here.

109. Defendants, City of Jackson, Mississippi, Chief Joseph Wade, Hinds County, Mississippi, Sheriff Tyree Jones, Dr. Elayne Hayes Anthony, Herman Horton, and Terrance Jackson, used their authority to create a dangerous environment for Joshua Brown and acted with deliberate indifference to his safety and well- being, causing him injury.

110. Defendants exerted complete control over Joshua Brown and/or his environment, forcing him to endure the unconstitutional and inhumane conditions at the Raymond Detention Center.

As a result of Defendants actions and abuse of process described in this Amended Complaint, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation,

physical and emotional pain and suffering, and other grievous and continuing injuries and damages as will be more fully shown at trial of this action.

## STATE LAW CLAIMS

### COUNT IX
### Reckless Disregard of the Safety and Well-Being of the Plaintiff
### (All Defendants except Alpha Phi Alpha Fraternity, Delta Phi Chapter)

111.    Plaintiff incorporates each paragraph of this Amended Complaint as if fully restated here.

112.    The claim herein arises out of the acts or omissions of the Defendants, City of Jackson, Mississippi, Chief Joseph Wade, Hinds County, Mississippi, Sheriff Tyree Jones, Dr. Elayne Hayes Anthony, Herman Horton, and Terrance Jackson, while engaged in the performance or execution of their duties or activities relating to police protection while the Defendants, were acting in reckless disregard of the safety and well-being of the Plaintiff who was not engaged in criminal activity at the time of injury. See Miss. Code Ann. § 11-46-9(c).

113.    The Defendants are liable for their negligent acts or omissions who acted in reckless disregard of the safety and well-being of the Plaintiff who was not engaged in criminal activity at the time of injury.

114.    As a result of Defendants' misconduct described in this Amended Complaint, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as will be more fully shown at the trial of this action.

### COUNT X
### Malicious Prosecution
### (All Defendants except Hinds County, Mississippi, Sheriff Tyree Jones)

115.    Plaintiff incorporates each paragraph of this Amended Complaint as if fully restated

here.

116.    On or about the October 18, 2023, Defendant Jackson, maliciously, and without probable cause therefor, signed on oath and filed a false and malicious affidavit which caused the Plaintiff to be arrested under a warrant issued by the Justice Court of Hinds County, Mississippi for the murder of Jaylen Burns.[9]

117.    Upon information and belief, Defendant Alpha Phi Alpha, through its officers, members, and agents, provided wrongful and false information to investigative authorities identifying Plaintiff as the "shooter".[10]

118.    No later than October 24, 2023, the Defendant Jackson, knew that the affidavit he signed and filed Justice Court of Hinds County, Mississippi for the murder of Jaylen Burns against the Plaintiff was untrue and false.

119.    Despite such knowledge the Defendant, Jackson, did nothing but instead permitted the false and malicious charge against the Plaintiff to continue the Defendants false and malicious prosecution of the Plaintiff.

120.    After the Court was advised on November 10, 2023 "by the Detective on the case that the charges of murder and possession of a weapon on school property had been N/A'd" and the Plaintiff was ordered to be released.

121.    As a result of Defendants City of Jackson, Chief Joseph Wade, Dr. Elayne Hayes Anthony, Herman Horton, Terrance Jackson, and Alpha Phi Alpha's malicious prosecution described in this Amended Complaint, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and

---

[9] See also, JSU "Incident Report" attached as Exhibit E.
[10] See attached transcript of Preliminary Hearing for Jamison Kelly, November 13, 2023, attached hereto as Exhibit F.

continuing injuries and damages as will be more fully shown at the trial of this action.

## COUNT XI
### Abuse of Process & Conspiracy to Abuse Process
### (All Defendants except Hinds County, Mississippi, Sheriff Tyree Jones)

122.    Plaintiff incorporates each paragraph of this Amended Complaint as if fully restated here.

123.    From October 18, 2023, until November 10, 2023, the Defendants City of Jackson, Chief Joseph Wade, Dr. Elayne Hayes Anthony, Herman Horton, Terrance Jackson, and Alpha Phi Alpha made an illegal and improper perverted use of the criminal process, a use neither warranted nor authorized by the process; that said Defendants had an ulterior motive or purpose in exercising such illegal, perverted or improper use of process.

124.    These Defendants agreed to and conspired to abuse process as to Plaintiff Joshua Brown.

125.    As a result of Defendants actions and abuse of process described in this Amended Complaint, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as will be more fully shown at the trial of this action.

## COUNT XII
### Intentional Infliction of Emotional Distress
### (All Defendants)

126.    Plaintiff incorporates each paragraph of this Amended Complaint as if fully restated here.

127.    That the Defendants intentionally inflicted emotional distress upon the Plaintiff, as more fully set forth hereinabove, and by pursuing a false and unsubstantiated criminal charge against him from October 18, 2023, until the dismissal thereof on or about November 10, 2023, and the Plaintiff was ordered to be released.

28

128.    As a result of Defendants actions and abuse of process described in this Amended Complaint, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as will be more fully shown at the trial of this action.

### COUNT XIII
**Negligent Infliction of Emotional Distress**
**(All Defendants)**

129.    Plaintiff incorporates each paragraph of this Amended Complaint as if fully restated here.

130.    That the Defendants negligently inflicted emotional distress upon Plaintiff, as more fully set forth hereinabove, and by pursuing a false and unsubstantiated criminal charge against him from October 18, 2023, until November 10, 2023, after the Court was advised on November 10, 2023 "by the Detective on the case that the charges of murder and possession of a weapon on school property had been N/A'd" and the Plaintiff was ordered to be released.

### COUNT XIV
**Slander *Per Se***
**(All Defendants)**

131.    Plaintiff incorporates each paragraph of this Amended Complaint as if fully restated here.

132.    The Defendants are guilty of slander per se in charging the Plaintiff with the murder of Jaylen Burns.

133.    The Defendants caused an unwarranted criminal charge to be brought against Plaintiff that led to his arrest, detention, and ultimate public humiliation. Further, said Defendants caused press releases to be issued the new media to encourage publication and dissemination of the charge of murder against the Plaintiff and/or social media posts regarding same.

134.    Further, once Defendants were presented with direct exculpatory evidence of

Plaintiff's innocence, rather than immediately dismissing or seeking dismissal of the unwarranted charge against the Plaintiff, or simply withdrawing Defendant Jackson's affidavit which caused the issuing of the warrant for the arrest of the Plaintiff, Defendants allowed said charge to continue for weeks subjecting the Plaintiff to continued public humiliation and scorn.

135.    Defendants' slander per se and Plaintiff's public humiliation has repeatedly occurred since October 18, 2023, when the Defendants made multiple news releases that the Plaintiff has been charged with the murder of Jaylen Burns.

136.    Each and every slander per se of the Plaintiff was the result of the affidavit signed and filed under oath by the Defendant Jackson, before the Justice Court of Hinds County, Mississippi on or about October 18, 2023, which was untruthful and false. Further once the Court was informed on November 10, 2023 "by the Detective on the case that the charges of murder and possession of a weapon on school property had been N/A'd" and the Plaintiff was ordered to be released, the Defendants did not to advise the media of the Plaintiff's innocence and further refused to acknowledge same.

137.    As a result of Defendants actions and abuse of process described in this Amended Complaint, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as will be more fully shown at the trial of this action.

**COUNT XV**
**Negligence Per Se**
**(All Defendants except Hinds County, Mississippi, Sheriff Tyree Jones)**

138.    Plaintiff incorporates each paragraph of this Amended Complaint as if fully restated here.

139.    Defendants, City of Jackson, Chief Joseph Wade, Dr. Elayne Hayes Anthony,

Herman Horton, Terrance Jackson, and Alpha Phi Alpha are guilty of negligence per se for violation of Miss. Code Ann. § 97-7-37, § 97-9-59, § 97-9-103, § 97-9-105.

140.    As a result of Defendants actions and abuse of process described in this Amended Complaint, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as will be more fully shown at trial of this action.

## DAMAGES

141.    Plaintiff incorporates by reference the allegations in all preceding paragraphs.

142.    Joshua Brown has suffered mental anguish, anxiety, suffering and stress, and permanent loss to his reputation as a result of his arrest and imprisonment for murder all of which has resulted in past, present and future financial damage.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Shirley Brown, as Natural Mother and Next Friend of Joshua Brown, a Minor, respectfully requests that the Court enter judgment in favor of Joshua Brown and against Defendants, and award the following relief:

a) Economic damages in an amount to be determined at trial to include past, present and future medical bills and loss of past, present and future wages and wage earning capacity;

b) Non-economic damages as a result of Defendants misconduct described in this Amended Complaint, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as will be more fully shown at trial of this action;

c) Punitive damages against the individual Defendants in an amount to be determined at trial;

d) Reasonable attorneys' fees and costs and expenses under 42 U.S.C. § 1988;

31

e)   Pre-judgment and post-judgment interest; and

f)   Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted, this the 2nd day of January, 2025.

SHIRLEY BROWN, as NATURAL MOTHER, and
NEXT FRIEND of JOSHUA BROWN, a MINOR

BY:   /s/ Aafram Y. Sellers

AAFRAM Y SELLERS
*Attorney for Plaintiffs*

OF COUNSEL:

AAFRAM Y. SELLERS, MSB#100261
SELLERS & ASSOCIATES, PLLC
395 Edgewood Terrace Drive
Jackson, Mississippi 39206
Telephone: (601)352-0102
Facsimile: (601)956-6719
aafram@sellerslawfirm.net

VICKI L. GILLIAM, MSB#9493
THE GILLIAM FIRM, PLLC
368 Highland Colony Parkway, #181
Ridgeland, Mississippi 39157