Seventh Circuit Court District Docket Report

**PLAINTIFF'S EXHIBIT**

**C**

## Mississippi Electronic Courts
### Seventh Circuit Court District (Hinds County Court - Jackson)
### CRIMINAL DOCKET FOR CASE #: 25CO1:23-cr-01511-JM-1

Case title: State of Mississippi v. KELLY

Date Filed: 10/18/2023

Assigned to: Johnnie McDaniels

---

**Defendant (1)**

**JAMISON KELLY, JR**
*ACC AFTER THE FACT(MURDER) JSU*
*CASE#2023000537*

[View Bond Info](#)

**Upcoming Settings:**
None Found

represented by  **Jerry W. Campbell**
914 Grove Street
VICKSBURG, MS 39183
601-638-6812
Fax: 601-638-1643
Email: jerrycampbelllaw@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counts**

None

**Count Action**

---

**Plaintiff**

**State of Mississippi**

| Date Filed | # | Clear | Sort Order | Docket Text |
|---|---|---|---|---|
| 10/18/2023 | 1 | ☑ (2 pages) | | AFF- WAR as to JAMISON KELLY, JR. Signed by JUSTICE COURT JUDGE on 10/18/2023. (LFM) (Entered: 10/18/2023) |
| 10/23/2023 | 2 | ☑ (2 pages) | | INITIAL APPEARANCE as to JAMISON KELLY, JR. Signed by Johnnie McDaniels on 10/23/2023. (KC) (Entered: 10/23/2023) |
| 11/01/2023 | 3 | ☑ (3 pages) | | MOTION for Bond *to Set (in the Alternative )*, MOTION for Hearing *Preliminary* by JAMISON KELLY, JR. (Campbell, Jerry) (Entered: 11/01/2023) |
| 11/11/2023 | 4 | ☑ (1 page ) | | Camera Coverage Notice (ZW) (Entered: 11/11/2023) |
| 11/11/2023 | 5 | ☑ (1 page ) | | Camera Coverage Notice-WLBT (ZW) (Entered: 11/11/2023) |
| 11/13/2023 | 6 | ☑ (1 page ) | | ORDER as to JAMISON KELLY, JR. Signed by James D. Bell on 11/13/23. (KB) (Entered: 11/13/2023) |
| 11/21/2023 | 7 | ☑ (3 pages) Attachments(+/-) | | EXHIBIT LIST (Attachments: # 1 Exhibit, # 2 Exhibit,) (RH) (VAULT) (Entered: 11/21/2023) |

**Selected Pages: 0**

[View Selected] [Download Selected]

---

| MEC Service Center |
|---|
| **Transaction Receipt** |

# GENERAL AFFIDAVIT

**Accessory After the Fact to Murder** [MS Code 97-1-5]

CASE NO. 2023000537

**FILED**

OCT 18 2023

ZACK WALLACE, CIRCUIT CLERK

BY _____ D.C.

STATE OF MISSISSIPPI
COUNTY OF HINDS

BEFORE THE UNDERSIGNED, a Judge of Hinds County,

Judicial District, State of Mississippi, Terrence Jackson makes the affidavit that

Jamison Kelly Jr

B/M SSN: ████████    DOB: ████████████

BEFORE THE UNDERSIGNED, a Judge of the County Court of Hinds County Judicial District, State of Mississippi, makes affidavit that on or about the 15th day of October 2023 within the Judicial District, County and State did willfully, unlawfully and feloniously at 1400 John R. Lynch assist Joshua Brown by driving him away from the scene knowing that such person had committed a Murder a felony with the intent to enable such person to escape after the commission of said crime in violation od Mississippi Code section 97-1-5.

_____
Affiant

Sworn to and subscribed before me, this 8th day of Oct 20 23

_____ Judge

# BENCH WARRANT

Case No: 2023000537

**THE STATE OF MISSISSIPPI**

TO THE SHERIFF OF HINDS COUNTY, MISSISSIPPI — GREETINGS:

We command you to take the body of <u>Jamison Kelly Jr</u>
B/M SSN: █████ DOB: ███████████ ████████

if to be found in your county, and <u>him</u> safely keep, so that you have <u>his</u> body before the County Court of Hinds County, in said State, to be held at the Court House thereof in the City of Jackson then and there to answer unto the State of Mississippi on a charge of:

<u>Accessory after the fact (Murder)  [97-1-5]</u>

by Affidavit.

HEREIN FAIL NOT, and have then and there this writ, with the manner you have executed the same.

Given under my hand and seal, and issued this the /8<u>th</u> day of <u>Oct</u> 20 <u>23</u>

_____ Court Judge
Hinds County, MS

**STATE OF MISSISSIPPI**
**COUNTY OF HINDS**

Executed and in custody this _____
Day of _____, 20_____
Tyree Jones, Sheriff

BY _____ D.S.

**FILED**

OCT 18 2023

ZACK WALLACE, CIRCUIT CLERK

BY_____D.C.

IN THE COUNTY COURT OF THE FIRST JUDICIAL DISTRICT
OF HINDS COUNTY, MISSISSIPPI

STATE OF MISSISSIPPI

**23-1511**

**VS**

**Kelly Jr., Jamison**

Case: 2023-000537

### INITIAL APPEARANCE

THIS DAY, the above-named Defendant had a U.C.R. Rule 6.03 Initial Appearance before the undersigned County Judge.

The Defendant was advised that he/she was charged with the crime of

**Accessory After Fact to Murder**

and was provided a copy of the complaint(s).

The Defendant was also advised of the following:

(1) That the Defendant is not required to speak and that any statements he/she makes may be used against him/her;

(2) If the Defendant is unrepresented, that he/she has the right to assistance of an attorney, and that if he/she is unable to afford an attorney, an attorney will be appointed to represent him/her;

(3) That the Defendant has the right to communicate with an attorney, family or friends, and that reasonable means will be provided to enable him/her to do so; and

(4) That the Defendant has a right to a preliminary hearing while the Defendant remains in custody, and a date for such hearing shall be set upon request unless said preliminary hearing is waived in writing or in open Court and upon the advice of the Defendant's attorney. If the preliminary hearing is waived by the Defendant, said Defendant shall be bound over to the next Grand Jury,

Bond is set in the amount of $ _NO Bond_ and upon the conditions set forth in a separate order of the Court, _Flight Risk_

**GPS MONTIORING SYSTEM** _____

SO ORDERED AND ADJUDGED on this, the _23rd_ day of _October_, 20_23_.

_____
COUNTY COURT JUDGE

ATTORNEY: _Pro to Attorney_

I WILL HIRE MY OWN ATTORNEY. I DO NOT WANT A FREE, COURT APPOINTED ATTORNEY this the ____ day of _____, _____.

IN THE COUNTY COURT OF THE FIRST JUDICIAL DISTRICT O/F
HINDS COUNTY, MISSISSIPPI

STATE OF MISSISSIPPI

CASE: **2023-000537**
CHARGE: **Accessory After the Fact to Murder**
DOB: ▮▮▮▮
SSN: ▮▮▮▮

VS

**Kelly Jr., Jamison**

### AFFIDAVIT TO ACCOMPANY MOTION FOR APPOINTMENT OF ATTORNEY

I, _Jamison Kelly Jr_, being first duly sworn, depose and say that I am the defendant in this case; that in support of my motion for appointment of an attorney, I state that because of my poverty I am unable to pay the fees and costs for legal counsel and that I believe that I am entitled to a court appointed attorney.

I further swear that the responses which I have made to the questions and instructions below relating to my ability to pay the fees and costs of an attorney are true. _Columbus, MS_ _football_

1. Are you presently employed?___*No*___
   a. If the answer is yes, state the amount of your salary and wages per month and give the name and address of your employer._____
   b. If the answer is no, state the date of your last employment and the amount of the salary and wages per month which you received._____
2. Have you received within the past twelve months any income from a business, profession or other form of self employment, or in the form of rental payments, interest, dividends, or other source?_____
   a. If the answer is yes, describe each source of income and state the amount received from each during the past twelve months.____*No*____

3. Do you own any cash or checking or savings account?___*No*___
   a. If the answer is yes, state the total value of the items owned?_____
4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)?___*No*___
   a. If the answer is yes, describe the property and state its approximate value._____
   ____*No*____
5. List the persons who are dependant upon you for support and state your relationship to those persons._____

**I understand that a false statement or answer to any question or instruction in this affidavit will subject me to penalties for perjury.**

_____
Signature of Defendant

State of Mississippi
County of Hinds

SUBSCRIBED AND SWORN TO before me this the __23rd__ day of __October__, 20_23_

_____
COUNTY COURT JUDGE

Needs Public Defender: _____

Will hire own Attorney: __Yes__

**IN THE COUNTY COURT OF HINDS COUNTY, MISSISSIPPI**

**STATE OF MISSISSIPPI**

**VS.**                                                                        **CAUSE NO. 23,1511**

**JAMISON KELLY, JR.**

<u>**MOTION FOR PRELIMINARY HEARING AND IN THE
ALTERNATIVE TO SET A BOND**</u>

COMES NOW, JAMISON KELLY, JR., defendant, by and through his attorney, Jerry

Campbell, and moves the Court for a preliminary hearing and in the alternative to set a bond and

in support thereof will show unto the Court the following:

1.      The Defendant is presently held in the Raymond Detention Center in Hinds

County, Mississippi.

2.      The Defendant is charged with accessory after the fact to murder and has been

denied bond.

3.      Pursuant to MRCrP 6.1 the Defendant requests a preliminary hearing to determine

if probable cause exists that the Defendant committed the crime charged.

4.      In the event the Court determines probable cause exists, then in such event the

Defendant asks this Court to set a reasonable bond. Pursuant to the Eighth Amendment of the

United States Constitution, the Defendant is entitled to a reasonable bond. This right is also

granted by the Mississippi Constitution. See Miss. Const., Art. 3 Section 29. Accordingly, the

purpose of bail is to secure the Defendant's presence at trial. *Lee v. Lawson*, 375 So. 2d 1019,

1021 (Miss. 1979). The Court has established several factors to consider when setting bail. See

*Ex Parte Dennis*, 334 So. 2d 369, 371 (Miss. 1976). Those factors are: (1) the seriousness of the

crime charged against the Defendant; (2) the extent of the punishment prescribed by the

legislature; (3) the Defendant's criminal record if any and previous record on bail if any; (4) his

reputation and mental condition; (5) the length of his residence in the community; (6) his family ties and relationships; (7) employment status, employment record and his financial condition; (8) the identity of responsible members of the community who would vouch for Defendant's reliability and (9) any other factors indicating defendant's mode of life, or ties to the community bearing on the risk of failure to appear.

5.     The Defendant is fully aware that the pending charges against him are serious, however, at the trial of this matter, facts will be presented to the Court proving his innocence.

6.     The Defendant is currently incarcerated.

7.     Defendant assures this Court he will appear at any time this Court orders him to so do.

WHEREFORE, PREMISES CONSIDERED, Defendant requests this Court to conduct a preliminary hearing on the charges against Jamison Kelly, Jr. At the conclusion of the preliminary hearing Defendant asks this Court to discharge him from custody. In the event the Court determines that probable cause exists then, in such event the Defendant asks this Court to set a reasonable bond.

Respectfully submitted,

*/s/Jerry Campbell*
JERRY CAMPBELL
Attorney for Defendant
MSB #5504
914 Grove Street
Vicksburg, Mississippi 39183
Tel:(601) 638-6812
Fax: (601) 638-1643

## **CERTIFICATE OF SERVICE**

I, Jerry Campbell attorney for Jamison Kelly, Jr., do hereby certify that I have this day hand delivered the above Motion to the Hinds County District Attorney, Jody Owens, on this the 1st day of November 2023.

*/s/ Jerry Campbell*

JERRY CAMPBELL

Camera Coverage Notice

Rule 5 of the Mississippi Rules for Electronic and Photographic Coverage of Judicial Proceedings requires that media representatives give at least 48 hours notice prior to the commencement of a proceeding if they propose to photograph, videotape, make an audio recording of or engage in any other form of electronic coverage.

Notice should be given to the clerk of the court and the court administrator in the court in which the proceeding will occur.

Note: the notice requirement does not apply to reporters who wish to attend a trial without taking pictures or making broadcast recordings.

To assist the court, please provide the following information:

Style of case: Jamison Kelly

Cause number:

Court: County

Judge: James Bell

Date of proceeding: 11/13/2023

Media organization: WJTV

Name(s) of journalist(s) and contact number(s): WJTV Staff, (601) 944-4924

Medium: video

Type of coverage anticipated: complete coverage

A complete copy of the Mississippi Rules for Electronic and Photographic Coverage of Judicial Proceedings is available on the web site of the Mississippi Supreme Court at www.mssc.state.ms.us. Journalists are expected to be familiar with and comply with the rules.

Date submitted: 11/10/2023

Submitted by: L. Terrell

# Camera Coverage Notice

**Rule 5 of the Mississippi Rules for Electronic and Photographic Coverage of Judicial Proceedings** requires that media representatives give at least **48 hours notice** prior to the commencement of a proceeding if they propose to photograph, videotape, make an audio recording of or engage in any other form of electronic coverage.

**Notice should be given to the clerk of the court and the court administrator in the court in which the proceeding will occur.**

Note: the notice requirement does not apply to reporters who wish to attend a judicial proceeding without taking pictures or making broadcast recordings.

To assist the court, please provide the following information:

**Style of case** _____

**Cause number**_____

**Court**_____

**Judge**_____

**Date of proceeding**_____

**Media organization**_____

**Name(s) of  journalist(s) and contact number(s)**

_____

_____

**Medium:**

☐ still photography     ☐ videotape     ☐ live broadcast or streaming     ☐ audio recording

**Type of coverage anticipated:**

☐ spot coverage          ☐ complete coverage          ☐ opening and closing arguments
☐ specific witnesses, if known_____

A complete copy of the Mississippi Rules for Electronic and Photographic Coverage of Judicial Proceedings is available on the web site of the State of Mississippi Judiciary at http://courts.ms.gov/rules/msrulesofcourt/rules_electronicphotographic_coverage.pdf. Journalists are expected to be familiar with and comply with the rules.

**Date submitted** _____     **Submitted by** _*C. J. LeMaster*_____
                                                                                          Signature

Administrative Office of Courts 2013

IN THE COUNTY COURT OF THE FIRST JUDICIAL DISTRICT OF
HINDS COUNTY, MISSISSIPPI

STATE OF MISSISSIPPI                                  CHARGE(S) Accessory
                                                     After the Fact to Murder

VS.                                                  CASE NO. 23-1511

JAMISON KELLY, JR.                                   DEFENDANT

## ORDER

THIS matter came on before the Court for a Preliminary Hearing on the charge(s) of Accessory After the Fact to Murder against the Defendant, and the Court having considered the evidence presented finds that there is No Probable Cause to charge the Defendant with Accessory After the Fact to Murder, and the state reserve the right to present the case to the grand jury..

IT IS THEREFORE, ORDERED AND ADJUDGED that the charge of Accessory After the Fact to Murder is hereby dismissed, and the defendant shall be released today, Monday, November 13, 2023.

**This does not apply to any other charges, if any which may be pending against the Defendant.**

**SO ORDERED, this the 13th day of November, 2023.**

_____
**COUNTY COURT JUDGE**

Jerry W. Campbell, Attorney for Defendant
Gwen Agho, Prosecuting Attorney

# IN THE COUNTY COURT OF THE FIRST JUDICIAL DISTRICT

## OF HINDS COUNTY, MISSISSIPPI

State of Mississippi                                             PLAINTIFF

VERSUS                                                NO: 23-1511

Jamison Kelly, Jr.                                         DEFENDANT

### EXHIBIT LIST

| EXHIBIT | DESCRIPTION |
| --- | --- |
| 1 | Elisha Brown's statement |
| 2 | Statement |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

COURT REPORTER:_____    Date:_____

On October 15 around 5:30pm, Jordan McCollins and I left M-Bar in Ridgeland, MS. We were there celebrating a birthday brunch and Jordan was intoxicated. I texted one of Jordan's line brother's Quinjontae Thorton and notified him that he was talking out of the side of his neck really bad, meaning he was verbally abusing me. McCollins and I made it back to school where we exchanged words before I dropped him off to his apartment which is the 800 building. McCollins took my car keys, left his camera, and phone in my car. I did not see my keys when I first got out of the car and the alarm kept going off and then I saw him walking towards me with my keys. He threw my keys at me and asked for his items and I told him they were in the passenger seat. He got his items while we were arguing back and forth and I asked him to get all of his stuff from my room at that time. As we walked to my room, he was threatening me and he pushed me in my back with both his hands. I continued towards my apartment 1004. When we made it into my room, he was gathering his items while our argument continued. He threatened me stating he could "finish me", and he pushed me again. I cried and told him to get out of my room. My suitemate, Carmen Brown, texted in our suitemate group chat asking was everybody ok cause she heard screaming and a loud noise. I thanked her, let her know it was me, and that I was fine. I ended up crying calling my best friend Jamison Kelly telling him that I was upset and afraid and he said he was going to come to check on me. I contacted my cousin, Jamareous Thompson, and asked him if I could come to his room to talk to him. I went to Jamareous's room in the 700s building and I told him that McCollins and I had an altercation where he was verbally and physically abusive. My cousin informed me that it was not safe in this building because many members of Alpha Phi Alpha fraternity, (Jordan's fraternity brothers) stayed in this building so we left to go back to my building 1004. My cousin and I made it to my room 1004D and he was asking me if I was ok. We were shortly accompanied by some of my other friends, Kyla Thomas, Jaylen Gunn, and Neavehia Boston who came by to see if I was ok and to get an understanding of what happened. We waited in my room until my best friend Jamison Kelly arrived so that I could go retrieve my items from Jordan McCollin's room. My best friend Jamison Kelly let me know he made it and I walked outside to go get him. He got out and it was three other individuals with him. We, Jamison Kelly, Kyla Thomas, Neavehia Boston, and Jamareous Thompson went to Jordan McCollins' room where I called his phone several times and I knocked letting him know I was there to get my stuff. He texted back saying he "left my shit outside the door" but that was a lie because I knew I had things inside his room. We (Kyla Thomas and I) walked into McCollins room to find him laying down in his bed and a girl named Mya Morton standing up by his desk. She looked and said she did not want anything to do with this and I informed her that I was only there to get my items. McCollins and I were the only two people who were talking throughout this entire interaction. His linebrother, Daniel Washington (DJ) walked in his room coming beside McCollins' bed. My friend helped me grab my stuff and on the way out the following members of Alpha Phi Alpha fraternity JaQuan Powell, Douglass Taylor, and one other member were standing in the corridor of his door. Again, nobody had said anything to anyone, not even my best friend had opened his mouth. We grabbed the items that he gave to me and left. I did not get a chance to grab my suitcase or my cup. Around 9:09pm, we made it back to my room. Jamison said he was going to get ready to go. Alphas, Quinjontae Thorton (Quin), Daniel Washington (DJ), and JaQuan Nelson then appeared at my door. Quin stated they came to make sure I was ok and see what happened. Then somebody said, we also brought your cup. I continued to cry and I informed them that their fraternity brother, Jordan, had physically assaulted me. At that time Jamareous Thompson told them I was getting upset and he asked them to leave. Quin put his finger in Jamareous's face and said "shut the fuck up I am not talking to you I am talking to her". Then my best friend Jamison told him to get out of my room. I asked the Alphas to leave and I escorted them outside only to see there were 2 more members of Alpha Phi Alpha fraternity outside. Kyla and I were standing outside apartment 1004 directly in front of the door and I asked them all to leave, however more Alphas approached us. It appeared to be 12-14 members of Alpha Phi Alpha fraternity present. They

began hovering over me and yelling at me. I was scared and confused. Two Alphas, Quin and DJ pushed past Kyla and I and attempted to yank the door handle open to enter my apartment and my suitemate Carmen Brown walked outside asking them to leave but they still did not leave. Then I saw Jamison walk outside my apartment and Quin immediately physically attacked him, punching him in the eye. Then six Alphas began physically attacking him and the men who accompanied Jamison attempted to fight off the Alphas.

I was afraid for Jamison's life and kept my eyes on him, all while I was being hit and pushed around by Alphas. I then heard four gun shots from behind me and I saw Jamison, on the ground and everybody began running. I ran to Jamison screaming and I shook him. He asked me where the shots came from and I told him from behind me. We asked each other if we were ok, then both went our separate ways and I left campus.

Present inside my apartment inside my room 1004D around 9:10-9:15
Quinjontae Thorton (Quin)
Daniel Washington (DJ)
JaQuan Nelson



EXHIBIT

1

Around 6:45 pm on October 15th, 2023, I was in my bedroom doing laundry. I got a text message from my cousin, Elisha Brown at this time and another followed around 7pm. Before I could respond, she called asking for my room number (University Pointe 703). Elisha came to my room to express her feelings about an altercation between her and Jordan McCollins. We do not stay in my room long. We went to her room (University Pointe 100?). She is continuing to tell me the story when three of our mutual friends (Kyla Thomas, Nevaehia Boston, and Jaylen Gazz) walked in her room. At some point in the night, Elisha wants to go to her car to get something out of her car. I follow her to her car so she does not walk alone. She then shows me her window has dents from a camera. We go back inside. She leaves shortly thereafter and returns with Jamison Kelly and three other unfamiliar men. We leave Elisha's room and go to Jordan McCollins room, because Elisha expresses that she wants to get her things from him. When we go to Jordan McCollins there are explicit instructions for everyone with Jamison to stay outside of this room. After Elisha and Jordan finish having their conversation, we leave because she is not in the mood to finish the conversation. We leave and head back to her room. When we get back to her room, three of Jordan McCollins fraternity brothers show up in the room to "check on her" as stated by one of the brothers. I can only see two of the three because of the position that I was standing in the room. I saw Quinjonte Thorton and JaQuan Nelson. Elisha is having a peaceful conversation with them, then she asks them to leave. I then ask them to leave, because I can see her about to cry. Q. Thornton then gets very aggressive with me. J. Kelly then defends me and tells the three boys to leave. Elisha and the fraternity brothers then go outside to finish the conversation. I stay inside with the unknown guys to ensure that the two parties do not mix. After a few moments, I ask that they leave due to one of the unfamiliar men getting visibly upset and requests for them to leave. As one of her roommates, Carmen Brown, is walking in, she expresses how she wants them to leave in front of her door. At some point the door swings open and the fraternity brothers start yelling with the boys on the inside and come inside of the apartment. A group of individuals and myself try to keep the two parties separate.

Once the two parties connect, I go into the nearest room because I have anxiety around the idea of violence due to me being assaulted at work this summer. They are fighting outside of the suite. I do not leave the room until I hear Elisha's voice by herself.

I do not know who was outside other than the individuals who were in the suite. I do not know who had a gun. I did not see the vehicle Kelly rode or left out in. I did not see Joshua Brown. There are two eye witnesses to prove that I was inside of the suite during the fight and shooting, Diana and Carmen Brown.



EXHIBIT

A

I.D