UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SHIRLEY BROWN, AS NATURAL MOTHER AND
NEXT FRIEND OF JOSHUA BROWN, A MINOR                    PLAINTIFF

VS.                          CIVIL ACTION NO. 3:24-cv-556-TSL-MTP

THE CITY OF JACKSON, MISSISSIPPI;
CHIEF JOSEPH WADE, IN HIS INDIVIDUAL
CAPACITY AS CHIEF OF POLICE OF THE
CITY OF JACKSON; HINDS COUNTY, MISSISSIPPI;
SHERIFF TYREE JONES, IN HIS INDIVIDUAL
CAPACITY AS SHERIFF OF HINDS COUNTY;
DR. ELAYNE HAYES ANTHONY, IN HER
INDIVIDUAL CAPACITY AS PRESIDENT OF
JACKSON STATE UNIVERSITY; HERMAN
HORTON, IN HIS INDIVIDUAL CAPACITY
AS CHIEF OF POLICE OF JACKSON STATE
UNIVERSITY; TERRANCE JACKSON, IN HIS
INDIVIDUAL CAPACITY AS DETECTIVE AND
OFFICER OF JACKSON STATE UNIVERSITY;
ALPHA PHI ALPHA FRATERNITY, DELTA PHI CHAPTER;
AND AS-YET UNKNOWN PERSON(S) OR ENTITIES            DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant
Tyree Jones for judgment on the pleadings pursuant to Federal
Rule of Civil Procedure 12(c) based on qualified immunity.
Plaintiff Shirley Brown, as natural mother and next friend of
Joshua Brown, a minor, has responded in opposition to the
motion. The court, having considered the pleadings and
memoranda of authorities submitted by the parties, concludes,
for reasons explained herein, that plaintiff's complaint does
not state a claim for relief against Sheriff Jones on which
relief can be granted. Rather than dismiss the complaint

1

against Sheriff Jones at this time, however, the court will allow plaintiff the opportunity to file a motion to amend to attempt to state a viable cause of action against him.

FACTS

Joshua Brown (hereafter "Joshua") was arrested by officers with the Jackson State University Police Department on October 18, 2023 and charged with the October 16, 2023 shooting death of Jaylen Burns on the campus of Jackson State University. He was incarcerated in the Raymond Detention Center from the date of his arrest until his release on November 13, 2023 following dismissal of the charge against him.[1] In this action, plaintiff has asserted claims against Hinds County Sheriff Tyree Jones, in his individual capacity, for alleged violations of Joshua's Fourteenth Amendment rights during his incarceration at the Raymond Detention Center.[2] Specifically, in the "Facts" section of her complaint, she alleges that while he was incarcerated, Joshua was

> deprived of basic humane necessities including but not
> limited to inedible moldy food, lack of access to and
> deprivation of drinking water, deprived of access to

---

[1] The murder charge was dismissed after investigators determined that Joshua could not have shot Burns as he was not present on the JSU campus at the time of the shooting.

[2] Plaintiff has also sued various Jackson State University (JSU) officials and officers, and the City of Jackson and its police chief for false arrest and imprisonment and malicious prosecution, among other claims. Motions to dismiss filed by those defendants are or will be addressed by separate opinions entered or to be entered.

> sanitary necessities such as a working toilet and
> showers, deprived of access to a bed and/or blankets,
> deprived of access to underwear, deprived of access to
> a clean and/or sanitary clothing.

She further alleges that Joshua

> was forced to be under constant threat of violence due
> to the fact that the cell door locks were inoperable;
> and he was forced to barter for access to use the
> sanitary facilities of another inmate's cell.  ...
> Moreover, [he] was a minor at the time of his arrest
> and a pretrial detainee forced to be incarcerated with
> [hundreds of] convicted criminals due to overcrowding
> [and] was subjected to hourly to violence, extortion,
> and physical, emotional and mental injury while
> incarcerated.

One count of the complaint is directed solely against Hinds County and Sheriff Jones, namely Count IV, which is brought under 42 U.S.C. § 1983 and charges that these defendants violated Joshua's rights under the Eighth and Fourteenth Amendments by failing to protect him from harm while incarcerated and subjecting him to dangerous conditions of confinement.  In addition, Counts VI, VII and VIII, alleging failure to train/supervise, "ratification" and a state-created-danger theory, respectively, are directed against all defendants, including Sheriff Jones.[3]

---

[3]    Plaintiff has also asserted claims against Sheriff Jones under state law for "reckless disregard of [Joshua's] safety and well-being," (Count IX); intentional and negligent infliction of emotional distress (Counts XII and XIII); and slander per se (Count XIV).  Sheriff Jones has not moved to dismiss the state law claims.

Sheriff Jones seeks dismissal of plaintiff's federal claims against him, arguing that her allegations fail to show that Joshua suffered any deprivation of his constitutional rights while incarcerated, and that even if she has adequately alleged that his rights were violated, she has not alleged that Sheriff Jones, "through his own individual actions," personally violated Joshua's constitutional rights.  He argues further that plaintiff has failed to plead, either directly or inferentially, that his actions were not objectively reasonable in light of clearly established law and that she therefore cannot overcome his qualified immunity.

"The Rule 12(c) standard is the same as that applied to Rule 12(b)(6)."  Vardeman v. City of Hous., 55 F.4th 1045, 1049 (5th Cir. 2022).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  A claim has facial plausibility when the plaintiff pleads factual content that "raises the right to relief above the speculative level" and "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

When considering a motion to dismiss, the court "must accept all facts as pleaded and construe them in the light most favorable to the plaintiff." Guerra v. Castillo, 82 F.4th 278, 285 (5th Cir. 2023). The court "do[es] not accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." Anokwuru v. City of Hous., 990 F.3d 956, 962 (5th Cir. 2021).

Sheriff Jones has raised the defense of qualified immunity. "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." Morgan v. Swanson, 659 F.3d 359, 370 (5th Cir. 2011). "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir. 2012). This means "the plaintiff bears the burden of pleading facts that demonstrate liability and defeat immunity. The plaintiff must show '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" Shaw v. Villanueva, 918 F.3d 414, 416–17 (5th Cir. 2019) (quoting Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013)).

Count IV

Considering Count IV first, there is an obvious disconnect between plaintiff's allegations in the "Facts" portion of the complaint and most of the charges asserted in Count IV.  For example, Count IV states that Sheriff Jones and Hinds County were deliberately indifferent to the safety of Joshua and other inmates housed at the Raymond Detention Center, as evidenced by their unwritten policies, customs and practices, including, among others, policies relating to the following:  "screening, hiring, training, supervising and disciplining officers who practice, condone or use excessive force upon inmates, including the plaintiff"; "investigating improper activities by officers either through offender complaints of misconduct or through internally-initiated complaints or investigations"; "identifying and taking appropriate action against officers who are in need of re-training, corrective measure, reassignment, or other non-disciplinary actions...."; "officers condoning and allowing inmates to fight"; "failing to prevent incidents of violence about which Hinds County employees had warning"; "knowingly allowing inmates access to materials which they then turned into 'shanks'"; "failing to address the smuggling of contraband into the facility"; and "failing to conduct shakedowns to recover contraband."

None of these asserted "policies" has any apparent relation
to the putative "facts" alleged by plaintiff.  For example,
while Count IV broadly refers to officers' use of excessive
force against inmates, "including [Joshua]," there are no
*factual allegations* whatsoever relating to any use of excessive
force by any officer at any time against Joshua.  And although
Count IV refers to "misconduct" and "improper activities by
officers," to "officers' condoning" inmate fights and incidents
of violence, to allowing inmates access to materials from which
to fashion shanks and to failing to address smuggling of
contraband or to conduct shakedowns to find contraband, there is
no apparent link between these purported policies and the
complaint's factual allegations relating *to Joshua*.  The court
thus disregards these allegations, which do not arguably state a
claim for harm *to Joshua*.

Denial of Humane Conditions of Confinement:  Plaintiff's
factual allegations relating to Joshua include what she contends
show that he was subjected to inhumane conditions of
confinement.  None of these allegations, as pled, singularly or
in combination, states a viable claim for relief.

"The constitutional rights of a pretrial detainee flow from
the procedural and substantive due process guarantees of the
Fourteenth Amendment ...."  Gibbs v. Grimmette, 254 F.3d 545,
548 (5th Cir. 2001) (citation omitted).  When evaluating the

7

claims of a pretrial detainee challenging his conditions of confinement, "[t]he standard is the same as that for a prisoner under the Eighth Amendment," which prohibits "cruel and unusual punishment." Cadena v. El Paso Cnty., 946 F.3d 717, 727 (5th Cir. 2020) (citation omitted). "While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." Herman v. Holiday, 238 F.3d 660, 664 (5th Cir. 2001) (citing Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994)).

To state a claim, plaintiff must allege both a condition "so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need," Harris v. Angelina County, Texas, 31 F.3d 331, 334 (5th Cir. 1994) (citation omitted), and that the defendant official was "deliberately indifferent to inmate health or safety," Farmer, 511 U.S. at 837, 114 S. Ct. 1970. See Shannon v. Vannoy, 682 F. App'x 283, 285 (5th Cir. 2017) (Eighth Amendment violation requires "extreme deprivation" of any minimal civilized measure of life's necessities); see also Wilson v. Lynaugh, 878 F.2d 846, 849 (5th Cir. 1989) (Eighth

8

Amendment protections "may afford protection against conditions
of confinement which constitute health threats but not against
those which cause mere discomfort or inconvenience."). An
official is deliberately indifferent "'only if he knows that
inmates face a substantial risk of serious harm and disregards
that risk by failing to take reasonable measures to abate it.'"
Hernandez v. Velasquez, 522 F.3d 556, 560 (5th Cir. 2008)
(quoting Farmer, 511 U.S. at 837, 114 S. Ct 1970). Plaintiff's
allegations herein do not show that Joshua's conditions of
confinement were objectively, sufficiently serious to amount to
a constitutional deprivation.

The Eighth Amendment requires that inmates be provided
"well-balanced meals, containing sufficient nutritional value to
preserve health." Green v. Ferrell, 801 F.2d 765, 770 (5th Cir.
1986) (alteration omitted). See Eason v. Thaler, 73 F.3d 1322,
1327 (5th Cir. 1996) ("To comply with the Constitution, inmates
must receive 'reasonably adequate' food." (quoting George v.
King, 837 F.2d 705, 707 (5th Cir. 1988))). "Whether the
deprivation of food falls below this threshold depends on the
amount and duration of the deprivation." Berry v. Brady, 192
F.3d 504, 507 (5th Cir. 1999) (quoting Talib v. Gilley, 138 F.3d
211, 214 n.3 (5th Cir. 1998)). Here, plaintiff alleges that
Joshua was served "inedible moldy food." But she does not
allege that he was served *only* moldy inedible food and not

enough edible food otherwise to meet his minimal nutritional needs, and thus does not state a claim based on deprivation of adequate food.

While safe and adequate drinking water is a basic human need, see Helling v. McKinney, 509 U.S. 25, 33, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993), and plaintiff alleges that Joshua experienced a "lack of access to and deprivation of drinking water," she does not allege the extent of such deprivation or that the deprivation was sufficiently severe to cause him harm. See McKines v. Sims, Cause No. 2:22cv167-KS-MTP, 2024 WL 1301352, at *3 (S.D. Miss. Mar. 5, 2024) (stating that "[i]n some cases, 'the denial of adequate drinking water can constitute cruel and unusual punishment[,]'" depending on the amount and duration of the deprivation, and observing that "[w]here summary judgment has been denied, there was evidence of harm, caused either by the denial itself or in combination with other deprivations." (citing cases)).

Plaintiff's allegations that Joshua was deprived of access a bed and/or blankets, to showers, underwear and clean and/or sanitary clothing suffer from the same lack of detail.

The Fifth Circuit has held that inmates do not have a constitutional right to an elevated bed. See Mann v. Smith, 796 F.2d 79, 85 (5th Cir. 1986) (rejecting argument that it was unconstitutional to require pretrial detainees to sleep on

10

mattresses placed on the floor, and stating, "[W]e know no source for ... a right" to an elevated bed for prisoners). The Fifth Circuit also "has not taken a position that would make it a constitutional violation to temporarily deny bedding or a mattress to an inmate, even a pretrial detainee." McAllister v. Strain, Civ. Action No. 08-5174, 2009 WL 500560, at *3 (E.D. La. Feb. 25, 2009). Thus, simply alleging that Joshua did not have access to a bed and/or blankets, without further detail, does not plausibly state a claim that his rights were violated.

Similarly, the complaint does not state a viable claim based on the alleged denial of access to a shower as it does not state whether Joshua was allowed to shower occasionally during his twenty-six-day incarceration and if so, how often, or whether he was completely deprived of access to a shower, and if so, whether that caused him harm of any sort. "[D]eprivation of the basic elements of hygiene is forbidden by the Eighth Amendment." Pittman v. Beaird, 1994 WL 24950, at *3 (5th Cir. 1994). But the constitution does not require that prisoners be allowed daily, or even weekly showers, and in fact, courts have held that the lack of access to a shower for several weeks can be permissible, particularly in the absence of any resulting harm. Compare Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998) (prisoner in disciplinary lockdown who was unable to bathe for two months and was therefore forced to clean himself using

11

toilet water, causing a fungal infection requiring medical attention, stated cognizable Eighth Amendment claim), <u>with Livingston v. Gilbert</u>, Civ. Action No. 4:20cv522, 2023 WL 9601442, at *7 (E.D. Tex. Aug. 22, 2023), <u>report and recommendation adopted</u> (E.D. Tex Feb. 8, 2024) (finding the "[p]laintiff's allegation that he was denied showers for three weeks fail[ed] to state a claim upon which relief [could] be granted.").

Plaintiff's allegation that Joshua was denied access to clean clothing, including underwear, like his other allegations, lacks sufficient detail and is thus insufficient to show that Joshua was not provided "reasonably adequate clothing," as required by the Constitution.  See <u>Green v. McKaskle</u>, 788 F.2d 1116, 1125 (5th Cir. 1986).  See also <u>Baqer v. St. Tammany Parish Government</u>, Civ. Action No. 20-980, 2025 WL 948167, at *3 (E.D. La. Mar. 28, 2025) (allegation that detainees were only allowed to shower and provided clean clothes once a week did not state claim for Eighth Amendment violation).

Plaintiff alleges that Joshua did not have access to a working toilet and was forced "to barter to use the sanitary facilities of another inmate's cell."  "[C]ontinued refusal to provide an inmate necessary access to a bathroom for a significant period of time could rise to the level of a constitutional deprivation."  <u>Beckendorf v. Fleischman</u>, Civ.

12

Action No. 21-01357, 2025 WL 842970, at *4 (E.D. La. Mar. 18, 2025). However, plaintiff does not allege any facts to explain the circumstances relating to this claimed lack of access to a working toilet or to Joshua's having to barter for the use of another inmate's toilet, for example, whether this was a one-time event or an ongoing problem. Plaintiff also does not allege that Sheriff Jones knew of and was deliberately indifferent to this situation. In fact, she does not allege facts from which it can be discerned that Sheriff Jones was aware of many, if not most of the issues of which she complains.

The Supreme Court held in <u>Farmer</u>,

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

<u>Farmer</u>, 511 U.S. at 837.

Individual liability under § 1983 requires personal involvement in the alleged constitutional deprivation. <u>Thompson v. Steele</u>, 709 F.2d 381, 382 (5th Cir. 1983). Thus, to recover against Sheriff Jones individually, plaintiff must allege facts showing his (1) "personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between his wrongful conduct and the constitutional violation." <u>Mesa v.</u>

Prejean, 543 F.3d 264, 274 (5th Cir. 2008) (citation omitted).
As sheriff, Jones was admittedly responsible for operation of
the Raymond Detention Center during the period of Joshua's
incarceration.  And it is indisputable that Sheriff Jones was
aware of systemic issues at the jail which resulted in ongoing
violations of inmates' constitutional rights, especially since
the United States Justice Department was in active litigation
with Hinds County over the conditions at the jail and Judge
Carlton Reeves had issued a ruling finding that a receiver
should appointed to run the jail.[4]  Plaintiff has, in fact,
referred to Judge Reeves' orders in the complaint and in her
response to Sheriff Jones' motion.  There is nothing in the
complaint, however, to indicate whether the issues Joshua
allegedly experienced relating to food, drinking water, bedding,
showers, and his toilet were systemic issues or were instead
specific to Joshua; and if the latter, there are no facts
alleged to show that Sheriff Jones was aware of the issues.  For
this reason, as well, plaintiff has not stated a cognizable
claim against Sheriff Jones relating to Joshua's conditions of
confinement.

---

[4]    The order appointing a receive was entered in October 2022
but was stayed pending appeal.  His ruling was affirmed by the
Fifth Circuit in February 2025.  See United States v. Hinds
Cnty. Bd. of Supervisors, 128 F.4th 616, 622 (5th Cir. 2025).

Failure to Protect:    "[P]rison officials have a
constitutional duty to protect prisoners from violence by other
inmates."  Silva v. Moses, 542 Fed. Appx. 308, 311 (5th Cir.
2013).  To succeed on a failure-to-protect claim, a plaintiff
must plead and prove that he was incarcerated under "conditions
posing a substantial risk of serious harm and that the prison
officials acted with deliberate indifference to [his] safety."
Id. (quoting Johnson v. Johnson, 385 F.3d 503, 524 (5th Cir.
2004)).

Plaintiff alleges that Joshua was under "constant *threat* of
violence due to the fact that the cell door locks were
inoperable." (emphasis added).  But the complaint contains no
factual, *nonconclusory* allegation that Joshua was ever actually
attacked or physically harmed by another inmate while
incarcerated.  His claim for damages due to an alleged fear of
the risk of harm does not state a cognizable claim for relief.
See Corbett v. City of Rockport, Civ. Action No. 2:24-CV-00102,
2024 WL 5690588, at *8 (S.D. Tex. Oct. 8, 2024), report and
recommendation adopted (S.D. Tex. Apr. 4, 2025)(observing that
while there is no binding Fifth Circuit authority on the issue,
"at least two other circuits have held that a failure to prevent
exposure to the risk of harm does not rise to a constitutional
violation absent a showing that the threat materialized and that
physical harm resulted." (citing Babcock v. White, 102 F.3d 267,

272 (7th Cir. 1996) (it is the reasonably preventable assault itself, not any fear of assault, that gives rise to compensable Eighth Amendment claim), and Wilson v. Yaklich, 148 F.3d 596, 601 (6th Cir. 1998)); see also id. (that "an inmate may not recover psychological damages absent a more-than-de-minimis physical injury, is well-established in this circuit) (citing Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)).  The complaint thus fails to state a viable Fourth Amendment claim against Sheriff Jones for failure to protect.

Counts VI, VII and VIII

Counts VI alleges that "Defendants' ... failure to train its/their employees ... demonstrates deliberate indifference to the rights of Joshua Brown."  This count fails to state a claim for two reasons.  First, it constitutes impermissible "shotgun pleading."  See Jones v. Grapeland Indep. Sch. Dist., No. 24-40194, 2024 WL 4490604, at *1 n.1 (5th Cir. Oct. 15, 2024) ("A 'shotgun pleading' is a pleading with 'multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claims is brought against.'") (quoting Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1323 (11th Cir. 2015) (identifying four types of shotgun pleadings and explaining that such pleadings "fail ... to give the defendants adequate notice of the claims against them and the grounds upon

16

which each claim rests")).  Second, a failure-to-train claim requires an underlying constitutional violation, <u>Graham v. Hodge</u>, 619 Fed. Appx. 394, 395 (5th Cir. 2015), and plaintiff has not stated a claim for any underlying constitutional violation.

Count VI, for "Ratification," is purportedly asserted against "All Defendants except the Alpha fraternity)," but this count does not state a claim for relief against Sheriff Jones as nothing is alleged to implicate him in the conduct that is the subject of this count, namely, the arrest and incarceration of Joshua Brown without probable cause and the failure to release him from custody upon proof that exculpated him of the charged crime.

Count VIII alleges that "Defendants used their authority to create a dangerous environment for Joshua Brown and acted with deliberate indifference to his safety and well-being" and "exerted complete control over [him] and/or his environment, forcing him to endure the unconstitutional and inhumane conditions at the Raymond Detention Center."  This claim fails as a matter of law as the Fifth Circuit has not recognized the state-created danger doctrine.  <u>See</u> <u>Watts v. Northside Indep. Sch. Dist.</u>, 37 F.4th 1094, 1096 (5th Cir. 2022) ("We have 'repeatedly declined to recognize the state-created danger doctrine.'" (quotation omitted)); <u>Joiner v. United States</u>, 955 F.3d 399, 407 (5th Cir. 2020); <u>Robinson v. Webster Cnty., Miss.</u>,

17

825 Fed. Appx. 192, 196 (5th Cir. 2020) (per curiam) ("[T]his Court has 'repeatedly noted' the unavailability of the [state-created danger] theory in this circuit." (quotation omitted)), cert. denied, 141 S. Ct. 1450 (2021).

Request to Amend

Based on the foregoing, the court concludes that plaintiff's complaint does not state a viable claim for relief against Sheriff Jones. Plaintiff asks that she be allowed to amend in the event the court concludes that no claim has been stated.

"[A] plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibility [sic] result in dismissal of the complaint with prejudice to re-filing." Hart v. Bayer Corp., 199 F.3d 239, 248 n.6 (5th Cir. 2000) (citation omitted). "Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." Id. In light of this authority, the court will grant plaintiff an opportunity to plead a case against Sheriff Jones.

Accordingly, it is ordered that plaintiff may move for leave to amend within fourteen days of the entry of this order. The proposed amended complaint must not include instances of

"shotgun pleading" and it must not incorporate all or part of any previously filed complaint.  If Sheriff Jones believes the proposed complaint still fails to state a claim or to overcome qualified immunity, he may then oppose amendment as futile.  <u>See</u> <u>Brown v. Tarrant County</u>, 985 F.3d 489, 498 (5th Cir. 2021). If no motion has been filed within fourteen days, the Court will dismiss with prejudice the complaint against Sheriff Jones.

SO ORDERED this 7th day of July, 2025.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE