UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


SHIRLEY BROWN, AS NATURAL MOTHER AND
NEXT FRIEND OF JOSHUA BROWN, A MINOR                    PLAINTIFF

VS.                          CIVIL ACTION NO. 3:24-cv-556-TSL-MTP

THE CITY OF JACKSON, MISSISSIPPI;
CHIEF JOSEPH WADE, IN HIS INDIVIDUAL
CAPACITY AS CHIEF OF POLICE OF THE
CITY OF JACKSON; HINDS COUNTY, MISSISSIPPI;
SHERIFF TYREE JONES, IN HIS INDIVIDUAL
CAPACITY AS SHERIFF OF HINDS COUNTY;
DR. ELAYNE HAYES ANTHONY, IN HER
INDIVIDUAL CAPACITY AS PRESIDENT OF
JACKSON STATE UNIVERSITY; HERMAN
HORTON, IN HIS INDIVIDUAL CAPACITY
AS CHIEF OF POLICE OF JACKSON STATE
UNIVERSITY; TERRANCE JACKSON, IN HIS
INDIVIDUAL CAPACITY AS DETECTIVE AND
OFFICER OF JACKSON STATE UNIVERSITY;
ALPHA PHI ALPHA FRATERNITY, DELTA PHI CHAPTER;
AND AS-YET UNKNOWN PERSON(S) OR ENTITIES        DEFENDANTS


MEMORANDUM OPINION AND ORDER

Defendants Dr. Elayne Hayes Anthony, President of Jackson

State University (JSU), Herman Horton, Chief of JSU's police

department, and JSU Police Detective Terrence Jackson, each of

whom is sued only in his or her individual capacity, have moved

to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

This is their second Rule 12(b)(6) motion to dismiss.  After

these defendants first moved to amend, plaintiff Shirley Brown,

as natural mother and next friend of Joshua Brown, a minor,

1

filed a motion to amend,[1] which defendants affirmatively did not
oppose, purportedly to address/correct the deficiencies
identified in defendants' motion.  Defendants now contend that
the amended complaint, like the original complaint, fails to
state a plausible claim for relief against them, and further
that the complaint's allegations are insufficient to overcome
the bar of their qualified immunity or immunity under the
Mississippi Tort Claims Act.  The court, having considered the
memoranda of authorities submitted by the parties, concludes
that the motion to dismiss by Anthony should be granted.  As to
defendant Horton, the court concludes that while most of the
claims against will be dismissed without leave to amend, it will
grant plaintiff one further opportunity to amend to state a
claim/claims against him for false arrest and/or illegal
detention, malicious prosecution and intentional infliction of
emotional distress.  As to Jackson, the court concludes, as
further explained below, that the motion should be granted as to
some claims, denied as to one claim, and that plaintiff should
be allowed one further opportunity to seek to amend as to the
remaining claims.

---

[1]    Joshua Brown was a minor whent his case was filed but has
since reached the age of majority, and by order entered on July
10, was substituted as the plaintiff in place of his mother, who
brought this action as his mother and hext friend.  The court
refers to the plaintiff herein as Shirley Brown, since she was
the named plaintiff when the motions were filed and briefed.

BACKGROUND

This case arises out of the arrest and detention of Joshua Brown for the October 16, 2023 shooting death of Jaylen Burns on the JSU campus.  Burns, a student at JSU, was shot and killed during an altercation at an apartment complex on the JSU campus between two groups of individuals, one consisting of several members of the Alpha Phi Alpha fraternity and the other, the former girlfriend of an Alpha Phi Alpha member and several of her friends and friends of her friends.  During the ensuing investigation, members of the fraternity allegedly identified Joshua Brown as the shooter, and on October 18, Joshua was arrested pursuant to a warrant issued based on an affidavit prepared by defendant Jackson which cited these eyewitness identifications of Joshua as the shooter.  Joshua was incarcerated in the Raymond Detention Center after being denied bond.

According to the complaint, on October 24, less than a week after his arrest, representatives of Joshua provided investigators with evidence that clearly proved Joshua was in Jones County, some eighty to ninety miles from the JSU campus, at the time of the shooting and thus could not possibly have been the shooter.  Among other things, the evidence included video surveillance footage purportedly showing Joshua at various locations in and around Jones County (including a Krispy Kreme

store in Hattiesburg and the parking lot of his dormitory at
Jones Community College) on the night of the shooting.  In the
days that followed, friends and family members of Joshua
continued to provide additional information that exonerated
Joshua, including cell phone data which showed Joshua's location
around the time of the shooting.  When investigators were
perceived as being unresponsive, representatives of Joshua
shared this information with members of the media, whose
investigations reportedly confirmed that Joshua was not present
at JSU when the shooting occurred.  And yet, plaintiff alleges,
despite conclusive, exculpatory, direct, and verifiable evidence
having been provided "to Detective Jackson and other Defendants
assisting with the investigation, ... no efforts in any manner
were taken [by investigators] related to that evidence provided
to said Defendants."  As a result, Joshua, who had committed no
crime, was held in jail for nearly four weeks, until he was
finally released after Detective Jackson informed the court on
November 10, 2023, that the charges against him were dismissed.

Based on these allegations, plaintiff has sued Anthony,
Horton and Jackson, in their individual capacities, asserting
federal claims under 42 U.S.C. § 1983 for alleged violation of
Joshua's due process rights, leading to his arrest (Count I);
malicious prosecution (Count II); false imprisonment (Count
III); false arrest/illegal detention (Count V); failure to

train/supervise (Count VI); ratification (Count VII); state-created danger (Count VIII); and further asserting state law claims of "reckless disregard of [Joshua's] safety and well-being" (Count IX); malicious prosecution (Count X); abuse of process and conspiracy to abuse process (Count XI); negligent and intentional infliction of emotional distress (Counts XII and XIII); slander per se (Count XIV); and negligence per se (Count XV).

RULE 12(b)(6) STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  See Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true (even if doubtful in fact.").  "Conclusory" means "[e]xpressing a factual inference without stating the underlying facts on which the inference is based."  Jenkins v. Rankin Cnty., Miss., Civ. Action No. 3:23-CV-374-DPJ-ASH, 2024 WL 3526903, at *2–3 (S.D. Miss. July 24, 2024) (quoting Black's Law Dict. (11th ed. 2019)).

Each of the moving defendants has raised the defense of qualified immunity.  "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal."  Morgan v. Swanson, 659 F.3d 359, 370 (5th Cir. 2011).  "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."  Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir. 2012).  This means "the plaintiff bears the burden of pleading facts that demonstrate liability and defeat immunity.  The plaintiff must show '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'"  Shaw v. Villanueva, 918 F.3d 414, 416–17 (5th Cir. 2019) (quoting Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013)).

ANALYSIS

6

<u>Defendants Anthony and Horton</u>

Plaintiff's only factual, nonconclusory allegation against Dr. Anthony and JSU Police Chief Horton appears in paragraph 25 of the amended complaint, which states as follows:

> On or about October 19, 2023, Defendants began to make statements to the media regarding the arrest of Joshua Brown. Elayne Hayes Anthony, President of JSU, Herman Horton, Chief of JSU Police Department [and] Terrance Jackson, Investigator for JSU Police Department, . . . all recklessly and with disregard for the truth held press conferences and released public statements to the media regarding their allegations, arrest, and incarceration of Joshua Brown.

> Photographs were disseminated in the media showing Joshua Brown with both hands and feet completely shackled and in a red jumpsuit, the likes of which indicates an inmate charged with capital murder or other heinous and violent offenders.

Dr. Anthony and Chief Horton did not violate Joshua Brown's constitutional rights or commit any tort under state law merely by holding a press conference and reporting on the fact of his arrest and incarceration or disseminating photos of him.[2]  As this is the *only* factual allegation in the amended complaint specifically relating to Dr. Anthony and Chief Horton,[3] and as it

---

[2]  Despite the implication, plaintiff has not alleged that defendants disseminated any photographs and in fact, has elsewhere asserted that the photos were disseminated by the Associated Press.

[3]   Although the complaint is otherwise replete with allegations charging "defendants" with various wrongs against Joshua, the court disregards those allegations as impermissible shotgun pleading.  <u>See</u> <u>Barmapov v. Amuial</u>, 986 F.3d 1321, 1324 (11th Cir. 2021) ("Shotgun pleading" which includes "a complaint

does not state any arguably cognizable claim against them, the
complaint as to these defendants is subject to dismissal.

Defendant Jackson

While plaintiff has asserted numerous causes of action
against defendant Jackson, most of them clearly do not state a
claim. Count I, charging a due process violation, fails for
several reasons. First, the allegations that form the basis of
this count, which relate to the investigation that led to
Joshua's arrest and the alleged failure of investigators to act
on clearly exculpatory evidence, implicate the Fourth
Amendment's protection against illegal seizure rather than the
due process clause.[4]  See Porter v. Lear, 751 Fed.Appx. 422, 432
(5th Cir.  2018) (citing Cuadra v. Hous. Indep. Sch. Dist., 626
F.3d 808, 814 (5th Cir. 2010) ("[T]here [is] no Fourteenth
Amendment 'liberty interest' or substantive due process right to
be free from criminal prosecution unsupported by probable
cause.")).

_____

that 'assert[s] multiple claims against multiple defendants
without specifying which of the defendants are responsible for
which acts or omissions,'" is "'flatly forbidden by the spirit,
if not the letter'" of Rule 8) (quoting Weiland v. Palm Beach
Cnty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015)).

[4]    Plaintiff has asserted a separate count, Count V, for false
arrest and illegal detention in violation of the Fourth
Amendment based on the same allegations.

Second, the allegations in this count – which goes on for twenty-two paragraphs and covers more than five pages – do not refer even once to Jackson specifically.  Rather, this count is quintessential shotgun pleading, with a plethora of allegations of wrongdoing by "defendants" without once differentiating between which defendants are responsible for which alleged acts and/or omissions.  Third, the allegations of wrongdoing, particularly those relating to probable cause for the arrest, are nearly entirely conclusory.

The complaint does not identify the factual basis for the charge of false imprisonment in Count III.  This count, consisting of one paragraph, merely recites that Joshua was falsely imprisoned by defendants, "as hereinbefore set forth," beginning October 18, 2023, and continuing to November 13, 2023, after the court was advised on November 10 that the charges against him had been dismissed.  Assuming this count is meant to be based on the allegations supporting the charge of false arrest relating to allegedly fabricated evidence or other lack of probable cause and/or of illegal detention due to the failure to investigate exonerative evidence, it is duplicative of Count V.  If that is not the basis of the claim, there are no allegations otherwise that arguably support the charge.

Plaintiff alleges in Count VI a failure-to-train/supervise theory of recovery, but there are no allegations that would

support such a claim against Jackson.  There are no allegations, direct or indirect, that he was anyone's supervisor, and even if he were, there is no allegation that would arguably support an allegation (which does not appear anywhere in the complaint) that he was deliberately indifferent to a need for training or supervision.  See Estate of Davis v. City of N. Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005) (when a plaintiff seeks to impose supervisory liability on an official in his individual capacity, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.").

Count VII, asserting a claim for ratification, does not state a claim for relief against Jackson, who is sued only in his individual capacity.  Ratification is a theory of *municipal* liability.  See Sligh v. City of Conroe, 87 F.4th 290, 303 (5th Cir. 2023) (quoting World Wide Street Preachers Fellowship v. Town of Columbia, 591 F.3d 747, 755 (5th Cir. 2009) (ratification theory of municipal liability generally provides that if "authorized policymakers approve a subordinate's decision and the basis for it, their ratification [is]

chargeable to the municipality because their decision is final.")).

That brings the court to Counts V and III, charging false arrest/illegal detention and malicious prosecution, respectively, in violation of the Fourth Amendment.  Having considered the allegations of the complaint in their entirety, the court concludes that the complaint does not state a cause of action against Jackson (or anyone) for false arrest.

To state a claim for false arrest, plaintiff must allege that the defendant lacked probable cause for the arrest, and where qualified immunity is raised, "must allege facts permitting an inference that defendants lacked arguable (that is, reasonable but mistaken) probable cause for the arrest[]." Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 207 (5th Cir. 2009) (citations omitted).

"A warrant secured from a judicial officer typically insulates law enforcement personnel who rely on it from liability for unlawful arrest, even in the absence of probable cause."  Hughes v. Garcia, 100 F. 4th 611, 619 (5th Cir. 2024). That is, "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for the Fourth Amendment violation."  Id. (internal quotation omitted).

11

To establish a claim for false arrest where the arrest was based on a warrant, the plaintiff must show: "(1) the affiant, in support of the warrant, included 'a false statement knowingly and intentionally, or with reckless disregard for the truth and (2) the allegedly false statement [was] necessary to the finding of probable cause.'" Winfrey v. Rogers, 901 F.3d 483, 493 (5th Cir. 2018) (quoting Franks v. Delaware, 438 U.S. 154, 155-56, 98 S. Ct. 2674 (1978)). Recklessness requires proof that the defendant "'in fact entertained serious doubts as to the truth' of the statement." Hart v. O'Brien, 127 F.3d 424, 449 (5th Cir. 1997) (quoting St. Amant v. Thompson, 390 U.S. 727, 731, 88 S. Ct. 1323, 20 L. Ed. 2d 262 (1968)), abrogation on other grounds recognized by Spivey v. Robertson, 197 F.3d 772, 775 (5th Cir. 1999).

In the "Facts" section of the complaint in this cause, plaintiff alleges:

> After the shooting, a number of members of the Alpha
> Phi Alpha fraternity ... who were then present at the
> scene of the shooting baselessly accused and alleged
> that Joshua Brown pulled the trigger. ...
> On or about October 18, 2023, Detective Terrence
> Jackson swore out an affidavit that Joshua Brown
> killed and murdered Jaylen Burns.
> Based on the ... affidavit[], ... bench warrants were
> issued ... for the immediate arrest and apprehension
> of Joshua Brown... . ...

Elsewhere in the complaint, and most particularly in Count I, she alleges that

Defendants deliberately misapprehended, suppressed
exculpatory evidence, hiding it from Plaintiff,
thereby misleading and misdirecting the criminal
prosecution of Plaintiff.
. . .
Defendants, upon information and belief, fabricated
and solicited evidence that they knew or should have
known to be false, including but not limited to
witness identifications, statements, and testimony
that they knew to be false, which allegedly implicated
Plaintiff in the crime, and they obtained Plaintiff's
arrest and incarceration in knowingly unconstitutional
conditions for 27 days—using that false evidence.
. . .
Defendants, upon information and belief, utilized a
series of false and fraudulent reports and related
documents, which they inserted into their file and
presented to state prosecutors and judges.  These
documents, which were used to show Plaintiff's alleged
connection to the crime, contained statements and
described events that were fabricated and that
Defendants knew to be false and were generated by
Defendant.

Defendants, upon information and belief, also obtained
false eyewitnesses identifications of Plaintiff,
allegedly implicating him in the crime.  These
identifications were completely unreliable and
Defendants knew that they were false.  Defendants used
the resulting false identifications to taint
Plaintiff's criminal prosecution until its dismissal.
Without these false eyewitnesses identifications,
Plaintiff would never have been arrested, charged, and
incarcerated . . . .

In addition, Defendants, based upon information and
belief, concealed and fabricated additional evidence
that is not yet known to Plaintiff.

None of these various allegations of wrongdoing in the

investigation of the shooting charge any specific defendant with

misconduct.  More to the point, there is no allegation that

Jackson engaged in any misconduct in the investigation.  This

is, as stated previously, shotgun pleading, which the court disregards.

Most pertinently, plaintiff makes the following allegations as part of the malicious prosecution claim in Count II:

> Defendant Jackson maliciously, and without probable cause therefor, signed on oath and filed a false and malicious affidavit which caused [Joshua] to be arrested under a warrant issued by the Justice Court of Hinds County, Mississippi for the murder of Jaylen Burns.
> Upon information and belief, Defendant Alpha Phi Alpha, through its officers, members, and agents, provided wrongful and false information to investigative authorities identifying Plaintiff as the "shooter".
> No later than October 24, 2023, the Defendant Jackson, knew that the affidavit he signed and filed Justice Court of Hinds County, Mississippi for the murder of Jaylen Burns against the Plaintiff was untrue and false.

Jackson's alleged statement in the affidavit that Joshua committed the offense of murder may have been false, but there is no allegation that he knew this was false. Jackson, according to plaintiff's own allegations, sought a warrant based on fraternity members' eyewitness identifications of Joshua as the shooter. She alleges these identifications were "baseless," "false" and "wrongful"; but she does not allege that Jackson knowingly procured false identifications or that he knew (or had reason to know) the identifications were false or unreliable when he signed the affidavit, or at a time prior to October 24, when he was provided with the purportedly exculpatory evidence.

14

She does allege that Jackson acted "maliciously" in signing a "malicious" affidavit, but these are conclusory allegations, which the court disregards.

While the court concludes that plaintiff has not stated a claim against Jackson for false arrest, the court does find that he has stated cognizable claims against him for illegal detention/false imprisonment and for malicious prosecution, and that her allegations as to these claims are sufficient to overcome his qualified immunity.

This Fifth Circuit has held that "an illegal detention by way of false imprisonment is a recognized cause of action under § 1983." Birdwell v. Livingston, 327 Fed. Appx. 457, 459, 2009 WL 1143210, at *1 (5th Cir. 2009) (citing Sanchez v. Swyden, 139 F.3d 464, 469 (5th Cir. 1998)). To state a § 1983 claim for false imprisonment, a plaintiff must allege that he was detained without probable cause in violation of the Fourth Amendment. See Manuel v. City of Joliet, 580 U.S. 357, 367, 137 S. Ct. 911, 197 L. Ed. 2d 312 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment 'false imprisonment.'"). However, "[a] [plaintiff] alleging false imprisonment must establish that an official's actions went beyond mere negligence before an illegal detention claim takes on constitutional dimensions." Id.

15

(citing Sanchez, 139 F.3d at 469).  "The detention of an individual for a limited duration on the basis of a facially valid [arrest] warrant and in spite of the prisoner's claims of innocence will not establish a [Fourth Amendment] violation." Birdwell, 327 Fed. Appx. at 459 (citing Baker v. McCollan, 443 U.S. 137, 143-45, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979), and Sanchez, 139 F.3d at 468-69).  An official may be liable, however, "if he deliberately ignores exonerative evidence or fails to act upon known exculpatory information."  Id. (citing Sanders v. English, 950 F.2d 1152, 1162 (5th Cir. 1992)).[5]  That is precisely what plaintiff has alleged in this case, i.e., that within a week of his arrest, Jackson was provided with evidence that conclusively proved that Joshua could not possibly have shot Jaylen Burns, and yet he did nothing in relation to this evidence; he ignored the evidence and knowingly allowed Joshua, a minor, who had committed no crime, to remain incarcerated for several weeks in a known dangerous facility.  Whether the

---

[5]    Other circuits have recognized a pretrial detainee's constitutional right, whether under the Fourth or Fourteenth Amendment, "to be free from continued detention after it was or should have been known that the detainee was entitled to release."  See Cannon v. Macon County, 1 F.3d 1558, 1563 (11th Cir. 1993) (finding this was a right under the Fourteenth Amendment due process clause); Russo v. City of Bridgeport, 479 F.3d 196, 207 (2d Cir. 2007) (recognizing Fourth Amendment to "protect[ion] from a sustained detention stemming directly from the law enforcement officials' refusal to investigate available exculpatory evidence.").

evidence will bear out plaintiff's allegations is a matter for another day.  Today, the court holds only that plaintiff's allegations are adequate to state a claim for violation of Joshua's clearly established constitutional right to be free from prolonged detention after Jackson was presented with clear evidence exonerating him of the charged offense.

Plaintiff's malicious prosecution claim is apparently based on essentially the same basic facts as her claim for illegal detention.  It is now clear that a Fourth Amendment malicious prosecution claim may be brought under § 1983.  Thompson v. Clark, 596 U.S. 36, 42-44, 142 S. Ct. 1332, 1338, 212 L. Ed. 2d 382 (2022).  The elements of such a claim, as recently reiterated by the Fifth Circuit, include an unlawful Fourth Amendment seizure, and "'(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.'"  Armstrong v. Ashley, 60 F.4th 262, 279 (5th Cir. 2023) (quoting Gordy v. Burns, 294 F.3d 722, 725 (5th Cir. 2002)).

Jackson argues that since plaintiff's underlying false arrest and false imprisonment claims fail, it follows that her malicious prosecution claim fails.  However, given the court's

conclusion that plaintiff has stated a claim for false imprisonment, that argument is rejected. He further argues that plaintiff cannot succeed on a malicious prosecution claim because there was probable cause "at the commencement of the proceeding." However, as "continuation of" a proceeding without probable cause will support a malicious prosecution claim, that argument is rejected, as well.

Lastly, Jackson argues that this plaintiff fails to state a claim because she has not plausibly alleged malice. What she has alleged is that once he was presented with evidence clearly exonerating Joshua, Jackson knew there was no probable cause for Joshua's continued detention and yet he failed to take any action relating to this evidence. In the court's opinion, this is a sufficient allegation of malice to withstand Jackson's motion to dismiss. See Eason v. City of Senatobia, No. 3:24-CV-49-MPM-JMV, 2025 WL 973941, at *7 (N.D. Miss. Mar. 31, 2025) (stating that "malice may be inferred from lack of probable cause," citing Stewart v. Sonneborn, 98 U.S. 187, 192, 25 L. Ed. 116 (1878), and also opining that for the purpose of a § 1983 malicious prosecution claim, "malice" includes "'1. The intent, without justification or excuse, to commit a wrongful act. 2. Reckless disregard of the law or of a person's legal rights,'" citing Black's Law Dictionary (12th ed. 2024)).

STATE LAW CLAIMS

In addition to her federal claims under § 1983, plaintiff has asserted numerous state law claims, including reckless disregard, malicious prosecution, abuse of process, intentional and negligent infliction of emotional distress, slander per se and negligence per se.

"Mississippi does not recognize reckless disregard as an independent tort," and so this claim will be dismissed. See Quinn v. Webster County, Miss., Civ. Action No. 1:21-CV-162-SA-DAS2023 WL 2731037, at *7 (N.D. Miss. Mar. 30, 2023) (citing Hodges v. Allstate Ins. Co., 2022 WL 766452, at *4 (S.D. Miss. Mar. 11, 2022)).

Plaintiff is barred by the Mississippi Tort Claims Act (MTCA), Miss. Code Ann. § 11-46-1 et seq., from pursuing claims against Jackson for negligent infliction of emotional distress and negligence per se, so these claims will also be dismissed. See id. § 11-46-72(7) (stating that "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties"); see also Klingler v. Univ. of S. Miss., No. 2:12-CV-150-KS-MTP, 2013 WL 6328852, at *17 (S.D. Miss. Dec. 5, 2013), aff'd sub nom. Klingler v. Univ. of S. Miss., USM, 612 F. App'x 222 (5th Cir. 2015) ("negligent infliction of emotional distress indisputably falls within the scope of the MTCA"); Wilson v. City of Biloxi, Miss.,

19

Civ. Action No. 1:11cv126-HSO-JMR, 2013 WL 2244309, at *6 (S.D. Miss. May 21, 2013) ("negligence per se" claim barred by the MTCA as not rising to the level of "reckless disregard" or "willful and wanton conduct.").

Her claim against Jackson for abuse of process is potentially also barred by the MTCA since causes of action that include malice as an element fall outside the MTCA, Miss. Code Ann. § 11-46-5, and since a claim of abuse of process may or may not include allegations of malice, see Delaney v. Miss. Dept. of Public Safety, Civ. Action No. 3:12CV229TSL-MTP, 2013 WL 286365, at *6 (S.D. Miss. Jan. 24, 2013), aff'd, 554 Fed. Appx. 279 (5th Cir. 2014) (allegation of employee's malicious abuse of process fell within coverage of MTCA); Burroughs v. City of Laurel, Miss., 2019 WL 4228438, at *3 (S.D. Miss. 2019) (since malice is not a required element of abuse of process, "abuse of process is not excluded from the MTCA's definition of course and scope of employment"). But since "[p]laintiff has not clearly stated what actions constitute the abuse of process," the court is not in a position to determine whether the claim is covered by the MTCA. See Davis v. Hinds Cnty., Miss., Civ. Action No.. 3:16cv674-DPJ-FKB, 2017 WL 2269010, at *10 (S.D. Miss. May 23, 2017). Whether barred by the MTCA or not, plaintiff has not stated a viable abuse of process claim.

Plaintiff vaguely alleges that defendants, including Jackson, "made an illegal and improper perverted use of the criminal process" and "had an ulterior motive or purpose in exercising such illegal, perverted or improper use of process." Not only does she fail to *specify* a "use of the criminal process" that was abusive or to suggest what the ulterior motive may have been, but she has also not alleged any facts that would arguably support an abuse of process with an ulterior motive. See Edmonds v. Delta Democrat Pub. Co., 230 Miss. 583, 594, 93 So. 2d 171, 175 (Miss. 1957) (describing typical case of abuse of process as one " where through the employment of process a man has been arrested or his property seized in order to extort payment of money from him ... or to prevent a conveyance, or to compel him to give up possession of some thing or value, when such were not the legal objects of the suit."); see also Harrison v. Yalobusha Cnty., Civ. Action No. 3:09-CV-106-SA-JAD, 2010 WL 3937964, at *14 (N.D. Miss. Oct. 5, 2010) ("The gravamen of abuse of process 'is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends.'" (quoting Heck v. Humphrey, 512 U.S. 477, 486, n. 5, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994)).

While plaintiff's slander per se claim is not foreclosed by the MTCA, see Miss. Code Ann. § 11-46-5, the complaint fails

to state a claim.  So far as the court can discern, this claim appears to be based on statements to the media relating to Joshua's arrest and incarceration for the murder of Jaylen Brown.  Plaintiff has not identified any statement made to the press that was not true; and she clearly has not alleged any false statement to the media by Jackson.  See Brothers v. Winstead, 129 So. 3d 906, 928 (Miss. 2014) (slander claim requires proof, *inter alia*, of "a false and defamatory statement concerning the plaintiff").[6]

The elements of plaintiff's malicious prosecution claim under Mississippi law are essentially the same for her federal malicious prosecution claim.  See Benjamin v. Hooper Elec. Supply Co., 568 So. 2d 1182, 1188 (Miss. 1990) ("(1) The institution [or continuation] of a criminal proceeding; (2) by, or at the insistence of, the defendant; (3) the termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceeding; (6) the suffering of injury or damage as a result of the prosecution.") (quotation marks and citation omitted).  Just as

---

[6]    If plaintiff is claiming, alternatively or additionally, that Jackson committed slander per se in making false statements in the warrant application for Joshua's arrest, the claim fails on the basis of a qualified privilege.  See Gunter v. Reeves, 198 Miss. 31, 37, 21 So. 2d 468, 470 (Miss. 1945) (count for libel based on allegations made in affidavit for search warrant feel under general rule that matter published in that manner is privileged).

with her federal claim, the "continuation of" proceedings without probable cause is actionable, id., and the "absence of probable cause for the prosecution is circumstantial evidence of malice," id. at 1191.  Therefore, the motion to dismiss this claim will be denied.

Jackson argues that plaintiff has failed to plausibly allege any of the elements of a valid claim for intentional infliction of emotional distress, which are: "(1) The defendant acted willfully or wantonly towards the plaintiff by committing certain described actions; (2) the defendant's acts are ones which evoke outrage or revulsion in civilized society; (3) the acts were directed at, or intended to cause harm to, the plaintiff; (4) the plaintiff suffered severe emotional distress as a direct result of the acts of the defendant; and (5) such resulting emotional distress was foreseeable from the intentional acts of the defendant."  Goode v. Walmart, Inc., 372 So. 3d 149, 163 (Miss. Ct. App. 2023) (quotation marks and citation omitted).  It is not apparent to the court that plaintiff's allegations is deficient on any of these elements and Jackson does not elaborate on his argument in the motion.  Accordingly, the court will deny the motion to dismiss this claim.

REQUEST TO AMEND

Plaintiff asks in her response that if the court determines
that the motion to dismiss should be granted in whole or in
part, then rather than dismiss, it should give her an
opportunity to amend to state a claim.  The Fifth Circuit has
held that "a plaintiff's failure to meet the specific pleading
requirements should not automatically or inflexib[ly] result in
dismissal of the complaint with prejudice to re-filing." Hart
v. Bayer Corp., 199 F.3d 239, 248 n.6 (5th Cir. 2000) (citation
omitted).  It has thus held that "[a]lthough a court may dismiss
the claim, it should not do so without granting leave to amend,
unless the defect is simply incurable or the plaintiff has
failed to plead with particularity after being afforded repeated
opportunities to do so."  Id.

Here, plaintiff has already been allowed to amend in
response to these defendants' previous Rule 12(b)(6) motion.
She now asks for a further opportunity to do so.  The court
perceives no arguable basis for allowing her to amend as to Dr.
Anthony, and accordingly, the request to amend as to Dr. Anthony
will be denied.

While plaintiff did not allege in her amended complaint
that Chief Horton had any personal involvement in the initial
investigation of the shooting or in the arrest of Joshua, she
did allege in her original complaint that he was in charge of

24

the investigation of the shooting, and she states in her response that Jackson and Horton were both provided with evidence exonerating Joshua on October 24. Accordingly, the court will grant plaintiff one further opportunity to amend to state a claim/claims against Horton for false arrest and/or illegal detention, malicious prosecution and intentional infliction of emotional distress. All remaining claims against him will be dismissed without leave to amend.

Regarding Jackson, the request to amend will be denied as futile or unwarranted, except as to the claim for false arrest. Plaintiff has made serious allegations of wrongdoing against "defendants" relating to the investigation which resulted in the arrest of Joshua Brown that she should be given one final opportunity to pursue.[7]

CONCLUSION[8]

Based on the foregoing, it is ordered that the motion to dismiss all plaintiff's claims against defendants Anthony is granted.

It is further ordered that the motion to dismiss is granted as to Horton, except that he may move to amend to attempt to

---

[7]    Particularly in view of the seriousness of her allegations, counsel for plaintiff are cautioned to be mindful of their obligations under Rule 11 in moving to amend.
[8]    The court has considered all arguments. Those not addressed would not have changed the outcome.

state the specific claims against him identified supra at p. 24-25.

The motion to dismiss as to Jackson is granted, without leave to move to amend, as to the claims in Counts I (due process), III (false imprisonment), VI (ratification), and VII (state-created danger); the motion dismiss is denied as to the illegal detention/false imprisonment claim in Count V and as to Count II, for malicious prosecution; the motion to dismiss is granted without leave to move to amend as to plaintiff's state law claims in Counts IX (reckless disregard), XI (abuse of process, XIII (negligent infliction of emotional distress), XIV (slander per se) and XV (negligence per se), but denied as to Counts X (malicious prosecution) and XII (intentional infliction of emotional distress).

Finally, it is ordered that plaintiff move for leave to amend, to the limited extent set forth herein, on or before July 21, 2025.[9]  The proposed amended complaint must not include instances of "shotgun pleading" and it must not incorporate all or part of any previously filed complaint.  If defendant Horton

---

[9]    By orders entered July 7, the court gave plaintiff fourteen days to move to amend to state claims against the City of Jackson and Police Chief Joseph Wade, and against Hinds County Sheriff Tyree Jones.  It is the court's intention that plaintiff shall file a single motion to amend, due no later than July 21, in response the court's opinions and orders regarding all these defendants as well as defendants Horton and Jackson.

or Jackson believes the proposed complaint still fails to state a claim or to overcome qualified immunity, he may then oppose amendment as futile.  See Brown v. Tarrant County, 985 F.3d 489, 498 (5th Cir. 2021).  If no motion to amend has been filed by July 21, the court will dismiss the complaint against Horton, and, in addition to the claims the court has determined herein should be dismissed without leave to amend, will dismiss the false arrest claim against Jackson with prejudice.

SO ORDERED this 10th day of July, 2025.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE